**No. 25-\_\_\_\_\_**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### IN RE CAMBRIDGE INDUSTRIES USA, INC.,

*Petitioner*.

### PETITION FOR A WRIT OF MANDAMUS

**On Petition for a Writ of Mandamus to the United States Patent and
Trademark Office, Patent Trial and Appeal Board, in
Nos. IPR2025-00433, IPR2025-00435**

Nicola A. Pisano
Regis C. Worley
COZEN O'CONNOR
501 West Broadway, Suite 1610
San Diego, CA 92101
619-234-1700

*Attorneys for Petitioner
Cambridge Industries USA Inc.*

October 10, 2025

## **CERTIFICATE OF INTEREST**

Counsel for Petitioner Cambridge Industries USA Inc. certifies the following:

1.     The full name of every party represented by me is:

- Cambridge Industries USA Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

- N/A

3.     All parent corporations and any publicly held companies that own more than 10 percent of the stock of the party represented by me are:

- Cambridge Industries USA Inc. is a wholly-owned subsidiary of CIG Shanghai Co., Ltd. headquartered in the Shanghai, P.R.C. No publicly held corporation owns more than 10% of the stock of Cambridge Industries USA Inc. or CIG Shanghai Co., Ltd.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

- Eversheds-Sutherland (US) LLP

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b):

i

- *Applied Optoelectronics, Inc. v. Cambridge Industries USA, Inc.*, 3:24-cv-01010 (N.D. Cal. filed Feb. 20, 2024)

- *Applied Optoelectronics, Inc. v. Accelight Technologies, Inc.*, 4:24-cv-09041 (N.D. Cal. filed Nov. 19, 2024)

6.  Organizational Victims and Bankruptcy Cases:

- N/A

I certify the above information is accurate and complete to the best of my knowledge.


Date:  October 10, 2025

By:   */s/ Nicola A. Pisano*
Nicola A. Pisano
Regis C. Worley, Jr.
COZEN O'CONNOR
501 W. Broadway, Suite 1610
San Diego, CA 92101
(619) 685-1714

*Attorneys for Appellant,*
*Cambridge Industries USA Inc.*

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ............................................................................ i

TABLE OF CONTENTS .................................................................................... iii

TABLE OF AUTHORITIES ................................................................................ v

STATEMENT OF RELATED CASES ................................................................. 1

RELIEF SOUGHT ............................................................................................... 2

INTRODUCTION ................................................................................................ 3

ISSUES PRESENTED .......................................................................................... 7

BACKGROUND .................................................................................................. 8

I.     Congress established IPR, and the USPTO created its own IPR
institution criteria without notice and comment ............................................ 8

II.    Petitioner filed IPR petitions ........................................................................ 9

III.   After the IPR petitions were filed, and without notice and comment,
the USPTO invented a new and evolving "settled expectations" rule .......... 10

IV.   The USPTO denied institution here based solely on "settled
expectations ................................................................................................ 13

STANDARD OF REVIEW ................................................................................ 13

REASONS WHY THE WRIT SHOULD ISSUE ................................................ 14

I.     The USPTO's errors are clear and indisputable ........................................ 14

     A.     The USPTO violated due process by retroactively applying a
new bar to these IPR petitions ............................................................ 14

     B.     The USPTO violated the APA by retroactively applying the
"settled expectations" rule without authority or reasoned
decision-making .................................................................................. 19

# TABLE OF CONTENTS
## *(Continued)*

***Page***

C.    The USPTO violated the APA and AIA by imposing a limitation on institution without notice-and-comment rulemaking ...................................................................................21

D.    The USPTO exceeded its authority—in violation of the APAand the Constitution—by inventing an IPR institution criterion untethered to the AIA ...........................................25

    1.    Congress did not empower the Director to create extra-statutory institution criteria .....................................26

    2.    Congress did not authorize the Director to deny institution because a patent is "old" .........................................30

II.    The remaining mandamus criteria are satisfied ...........................................31

    A.    The USPTO's errors are reviewable in mandamus ...........................31

    B.    Petitioner has no other adequate means of relief ................................35

    C.    Mandamus is appropriate under the circumstances. ...........................35

CONCLUSION ....................................................................................................36

CERTIFICATE OF COMPLIANCE.....................................................................38

CERTIFICATE OF SERVICE .............................................................................39

iv

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AFL-CIO v. NLRB*,
    57 F.4th 1023 (D.C. Cir. 2023)...........................................................................23

*Am. Hosp. Ass'n v. Bowen*,
    834 F.2d 1037 (D.C. Cir. 1987)..........................................................................23

*Amazon.com, Inc. v. VirtaMove, Corp.*,
    IPR2025-00561, 2025 WL 1913383 (AD July 11, 2025)..................................12

*Analog Devices, Inc. v. Number 14 B.V.*,
    IPR2025-00550, 2025 WL 1953257 (AD July 16, 2025)..................................12

*Apotex Inc. v. Alkermes Pharma Ireland Ltd.*,
    IPR2025-00514, 2025 WL 1853593 (AD July 2, 2025)....................................12

*Apple Inc. v. Fintiv, Inc.*,
    IPR2020-00019, 2020 WL 2126495 (PTAB Mar. 20, 2020).....................*passim*

*Apple Inc. v. Koss*,
    IPR2021-00255, Paper 22 (P.T.A.B. June 3, 2021)...........................................10

*Apple Inc. v. Vidal*,
    63 F.4th 1 (Fed. Cir. 2023)..........................................................................32, 34

*Aqua Prods., Inc. v. Matal*,
    872 F.3d 1290 (Fed. Cir. 2017)..........................................................................25

*Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*,
    72 F.4th 284 (D.C. Cir. 2023)............................................................................20

*In re BigCommerce, Inc.*,
    890 F.3d 978 (Fed. Cir. 2018).....................................................................35, 36

*Bittner v. United States*,
    598 U.S. 85 (2023)............................................................................................29

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

## Cases (*Cont'd*)

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ........................................................................20

*In re Brunetti*,
  — F.4th—, 2025 WL 2446503 (Fed. Cir. Aug. 26, 2025) ...........................20, 21

*Caihong Display Devices v. Corning, Inc.*,
  IPR2025-00439, 2025 WL 1912302 (AD July 10, 2025) .................................12

*In re Chestek PLLC*,
  92 F.4th 1105 (Fed. Cir. 2024) ..............................................................23

*Coal. for Common Sense in Gov't Procurement v. Sec'y of
  Veterans Affs.*,
  464 F.3d 1306 (Fed. Cir. 2006) ..............................................................22

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) .........................................................35, 36

*Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*,
  579 U.S. 261 (2016) ................................................................... *passim*

*Dabico Airport Sols. Inc. v. AXA Power ApS*,
  IPR2025-00408, Paper 21 (AD June 18, 2025) ........................................11, 18

*Durr v. Nicholson*,
  400 F.3d 1375 (Fed. Cir. 2005) ..............................................................16

*ESIP Series 2, LLC v. Puzhen Life USA, LLC*,
  958 F.3d 1378 (Fed. Cir. 2020) ..............................................................33

*Facebook, Inc. v. Windy City Innovations, LLC*,
  973 F.3d 1321 (Fed. Cir. 2020) ..............................................................24

*FDA v. Wages & White Lion Invs., L.L.C.*,
  604 U.S. 542 (2025) ........................................................................20, 21

## TABLE OF AUTHORITIES
### (*Continued*)

**Page(s)**

**Cases (*Cont'd*)**

*Fuentes v. Shevin*,
  407 U.S. 67 (1972) ........................................................................19

*Gallo v. Dep't of Transp.*,
  725 F.3d 1306 (Fed. Cir. 2013) ....................................................29

*Gen. Elec. Co. v. EPA*,
  290 F.3d 377 (D.C. Cir. 2002) ......................................................23

*In re Google LLC, et al.*,
  No. 25-144 (Fed. Cir., filed Aug. 18, 2025) ..................................5

*Google LLC v. VirtaMove, Corp.*,
  IPR2025-00487, 2025 WL 1913566 (AD July 11, 2025) ................12

*GPX Int'l Tire Corp. v. United States*,
  780 F.3d 1136 (Fed. Cir. 2015) ....................................................18

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ......................................................................28

*Hanauer v. Reich*,
  82 F.3d 1304 (4th Cir. 1996) ........................................................33

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ......................................................................35

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*,
  467 U.S. 51 (1984) ........................................................................15

*In re HighLevel, Inc.*,
  No. 25-148 (Fed. Cir., filed Aug. 29, 2025) ..................................5

*IGT v. Zynga Inc.*,
  144 F.4th 1357 (Fed. Cir. 2025) ....................................................34

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

## Cases (*Cont'd*)

*Kangxi Commc'n Techs. v. Skyworks Sols., Inc.*,
    IPR2025-00372, 2025 WL 1959071 (AD July 16, 2025) ...................................12

*KingstonTech. Co. v. Vervain, LLC*,
    IPR2025-00614, 2025 WL 1953666 (AD July 16, 2025) .................................12

*Lamoille Valley R.R. Co. v. I.C.C.*,
    711 F.2d 295 (D.C. Cir. 1983)...............................................................................24

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)................................................................................................16

*Leedom v. Kyne*,
    358 U.S. 184 (1958)................................................................................................33

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982)................................................................................................19

*In re Motorola Solutions, Inc.*,
    No. 25-134 (Fed. Cir., filed June 23, 2025)...................................................5, 26

*MST Exp. v. Dep't of Transp.*,
    108 F.3d 401 (D.C. Cir. 1997)..............................................................................24

*Mylan Labs. Ltd. v. Janssen Pharma., N.V.*,
    No. 21-1071, ECF No. 16 (Fed. Cir. Dec. 7, 2020)..........................................32

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
    989 F.3d 1375 (Fed. Cir. 2021) ....................................................................*passim*

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety &
    Health Admin.*,
    595 U.S. 109 (2022)................................................................................................27

*NLRB v. Wyman-Gordon Co.*,
    394 U.S. 759 (1969).........................................................................................21, 25

## <u>TABLE OF AUTHORITIES</u>
### (*Continued*)

**Page(s)**

**Cases (*Cont'd*)**

*NXP USA, Inc. v. Redstone Logics LLC*,
    IPR2025- 00485, 2025 WL 1909554 (AD July 10, 2025) ................................. 12

*In re Palo Alto Networks, Inc.*,
    44 F.4th 1369 (Fed. Cir. 2022) ............................................................................ 35

*Paralyzed Veterans of Am. v. West*,
    138 F.3d 1434 (Fed. Cir. 1998) ........................................................................... 22

*PHH Corp. v. CFPB*,
    839 F.3d 1 (D.C. Cir. 2016) (Kavanaugh, J.), *order vacated* (Feb.
    16, 2017), *reinstated in relevant part*, 881 F.3d 75 (D.C. Cir. 2018) ............... 15

*Pickus v. U.S. Bd. of Parole*,
    507 F.2d 1107 (D.C. Cir. 1974) ........................................................................... 23

*Princess Cruises, Inc. v. United States*,
    397 F.3d 1358 (Fed. Cir. 2005) ......................................................... 15, 16, 17, 18

*Reeder v. FCC*,
    865 F.2d 1298 (D.C. Cir. 1989) ........................................................................... 23

*Rodriguez v. Peake*,
    511 F.3d 1147 (Fed. Cir. 2008) ................................................................... 15, 18

*Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*,
    896 F.3d 1322 (Fed. Cir. 2018) ........................................................................... 26

*Samsung Elecs. Co. v. Mobile Data Techs., LLC*,
    IPR2025-00535, 2025 WL 1908154 (Acting Deputy Chief APJ
    July 10, 2025) ....................................................................................................... 12

*Samsung Elecs. Co. v. Sinotechnix LLC*,
    IPR2025-00331, 2025 WL 1836417 (Acting Deputy Chief APJ
    July 2, 2025) ......................................................................................................... 12

ix

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

**Cases (*Cont'd*)**

*SAP Am., Inc. v. Valtrus Innovs. Ltd.,*
  IPR2025-00414, 2025 WL 1909114 (AD July 10, 2025) ..................................12

*In re SAP America, Inc.,*
  No. 25-132 (Fed. Cir., filed June 16, 2025)....................................................5, 28

*SAS Inst., Inc. v. Iancu,*
  584 U.S. 357 (2018).............................................................................31, 32, 33

*Sig Sauer Inc. v. Lone Star Future Weapons,*
  IPR2025-00410, 2025 WL 1773118 (AD June 26, 2025)................................12

*Taylor Energy Co. v. Dep't of the Interior,*
  990 F.3d 1303 (Fed. Cir. 2021) ............................................................................34

*Thryv, Inc v. Click-To-Call Techs., LP,*
  590 U.S. 45 (2020)..................................................................................................33

*U.S. Telecom Ass'n v. FCC,*
  400 F.3d 29 (D.C. Cir. 2005)...............................................................................24

*Woodward v. DOJ,*
  598 F.3d 1311 (Fed. Cir. 2010) .........................................................................16

**Statutes**

5 U.S.C.:
  Section 551 et seq. .......................................................................*passim*
  Section 553......................................................................................................22
  Section 706(2)...........................................................................14, 26, 32, 33
  Section 706(2)(A)-(C)...............................................................................19, 31

35 U.S.C.:
  Section 311.........................................................................................................8
  Section 314(d)......................................................................................*passim*

x

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

**Statutes (*Cont'd*)**

American Inventors Protection Act of 1999, Pub. L. No. 106–113,
§4608, 113 Stat. .......................................................................................30

America Invents Act ....................................................................................*passim*

National Retail Federation, The High Tech Inventors Alliance, The
Alliance For Automotive Innovation, The Computer &
Communications Industry Association, Act ........................................3

**Other Authorities**

88 Fed. Reg. 24,503 ..............................................................................8, 18

89 Fed. Reg. 28,693 ..............................................................................8, 18

Fed. Cir. R. 32(b)(2) ....................................................................................38

Fed. R. App. P. 32(a)(5) and 32(a)(6) ......................................................38

Fed. R. App. P. 32(f) ...................................................................................38

H.R. Rep. No. 112-98 (2011) .......................................................................8

Interim Director Discretionary Process, USPTO.gov, available at
https://www.uspto.gov/patents/ptab/interim-director-discretionary-
process...................................................................................................12

Jonathan DeFosse et al., *Data Undermines USPTO's 'Settled
Expectations' Doctrine* (Aug. 29, 2025), *available at*
https://www.law360.com/articles/2381350 ........................................4

Memorandum from USPTO Director to PTAB, *Interim Procedure* for
*Discretionary Denials in AIA Post-Grant Proceedings with
Parallel District Court Litigation* (June 21, 2022) .............................9

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

**Other Authorities (*Cont'd*)**

*Patent Office Plans Rulemaking For New PTAB Denial Process*,
    Law360, https://www.law360.com/articles/2324147 (Apr. 17,
    2025) ........................................................................................................8

Ryan Davis, *Stewart Says New Patent Policies Aim to Bring Stability*
    (Sept. 8, 2025), *available at*
    https://www.law360.com/articles/2364638/stewart-says-new-
    patent-policies-aim-to-bring-stability ...............................................................12

## STATEMENT OF RELATED CASES

The two patents at issue in these *inter partes* review ("IPR") proceedings (U.S. Patent Nos. 9,523,826 and 10,042,116) are being asserted in *Applied Optoelectronics, Inc. v. Cambridge Industries USA, Inc.*, No. 3:24-cv01010-JD (N.D. Cal.) (filed February 20, 2024).  That case is currently stayed.

**RELIEF SOUGHT**

Cambridge Industries USA Inc. ("Petitioner") respectfully requests a writ vacating the non-institution decisions in IPR2025-00433 and IPR2025-00435.[1]  The Court should direct the USPTO to reconsider institution solely under the statutory criteria, not the agency's extra-statutory framework.  At a minimum, the Court should direct the USPTO to reconsider institution without the USPTO's new "settled expectations" rule and solely under the guidance in place when the petitions were filed.

---

[1] Petitioner is challenging both denials in a single mandamus petition because the USPTO issued a single decision filed in both IPRs, the denials were substantively identical, and the relief requested here is the same.

2

## INTRODUCTION[2]

Mandamus is available in extraordinary circumstances, and the USPTO's assertion of unbridled authority over IPR institution is extraordinary. Here, the USPTO denied institution based on a rule that "old" patents gain "settled expectations" that immunize them from IPR. Appx001-004, Appx008-011. That newly-minted rule finds no support in the Patent Law since the founding of the Republic, or ever. It rewrites Section 315 of the America Invents Act and is utterly at odds with judicial holdings on patent validity. It did not exist when Petitioner filed its IPR petitions. And it was imposed without notice-and-comment regulation.

The "settled expectations" rule has dramatically upended established IPR practice. Since IPR's inception in 2012, all patents were equally eligible for IPR no matter their age. After all, Congress designed IPR with no deadline for "old" patents. Consistent with that framework, the USPTO regularly instituted IPR and canceled

---

[2] This brief largely incorporates *mutatis mutandis* the arguments set forth in the Petition for Writ of Mandamus by Petitioners Sandisk Technologies, Inc. and Western Digital Technologies, Inc., filed September 17, 2025, currently pending before this Court as Case No. 25-152 and seeking similar relief. Petitioner invites this Court to consider here as well the Amicus Curaie briefs filed in that action by the Intellectual Property and Innovation Professors, US*Made, The National Retail Federation, The High Tech Inventors Alliance, The Alliance For Automotive Innovation, The Computer & Communications Industry Association, Act | The App Association, and The Software & Information Industry Association and Unified Patents, LLC in support of Sandisk's and Western Digital's Petition, which apply equally to this Petition.

claims for patents of every vintage, including "old" patents. But everything changed in March 2025, when the Acting Director[3] began discretionarily denying institution because patents were too "old" to be challenged. In just two months, the USPTO denied 64 IPR petitions on that ground—despite the USPTO's consistent, *decade-plus* practice to the contrary, instituting and resolving IPRs in 2,269 cases with similarly "old" patents.[4] Under the current interpretation of Section 315, a would-be Petitioner must scour newly issued patents, predict which might someday be asserted against them (however baselessly), then launch pre-emptive IPR challenges in the first few years of the patent's life—or forfeit his statutory rights to seek IPR.

That Patent Office's new rule violently clashes with the statute enacted by Congress: the AIA omits any "old"-patent limitation on IPR. It was certainly a dramatic departure to Petitioner (and hundreds of other petitioners), who filed its IPR petitions before the "settled expectations" rule abruptly appeared. Yet the USPTO applied that new rule to Petitioner post-hoc—after Petitioner already paid to have its petitions reviewed under the old standards.

---

[3] Acting Director Coke Morgan Stewart was replaced by Director John Squires on September 18, 2025, who promptly appointed the former Acting Director as Deputy Director in charge of handling discretionary denials. *See* Appx069.

[4] *See* Jonathan DeFosse et al., *Data Undermines USPTO's 'Settled Expectations' Doctrine*, Law360 (Aug. 29, 2025), *available at* https://www.law360.com/articles/2381350 (Appx455-459).

4

Over the past several months, the USPTO has replaced preexisting institution rules with an unpredictable flurry of new ones—all without notice and comment, as required by the Administrative Procedures Act, 5 U.S.C. § 551 et seq.. These novel, arbitrary hurdles have already drawn several other mandamus challenges.[5]

Now the USPTO has gone even further, inventing a retroactive "settled expectations" rule that further disregards legal limits by violating due-process anti-retroactivity constraints. It transgressed APA limits on retroactive regulation and requirements of reasoned decision-making. It ignored APA notice-and-comment obligations. And most fundamentally, it exceeded the power Congress gave it, by inventing an extra-statutory "settled expectations" rule—violating both the APA and the Constitution's separation of powers.

Petitioner acknowledges that 35 U.S.C. §314(d) generally bars appeals attacking institution determinations in "ordinary" case-specific "dispute[s]." However, as here, §314(d) does not bar review of agency "shenanigans," including rulings that blatantly violate constitutional rights and exceed statutory authority. *Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*, 579 U.S. 261, 271, 274-75 (2016). The retroactive "settled expectations" rule, unilaterally created from

---

[5] *In re SAP America, Inc.*, No. 25-132 (Fed. Cir., filed June 16, 2025); *In re Motorola Solutions, Inc.*, No. 25-134 (Fed. Cir., filed June 23, 2025); *In re Google LLC, et al.*, No. 25-144 (Fed. Cir., filed Aug. 18, 2025); and *In re HighLevel, Inc.*, No. 25-148 (Fed. Cir., filed Aug. 29, 2025).

whole cloth – and without a scintilla of judicial support – is the very situation requiring judicial redress.

Petitioner requested Director rehearing on the discretionary denials in IPR2025-00433 and -00435, noting the complete absence of legal precedent for "settled expectations." *See* Appx204-208, Appx401-405. Petitioner also explained that the creation of "settled expectations" undermined the public policy goals of the IPR provisions, placing an entire class of patents beyond challenge. Appx212-216, Appx409-413. Patent Owner dismissed these concerns. Appx220-227, Appx417-425. The Acting Director denied that rehearing request without addressing any of the concerns raised by Petitioner. Appx006, Appx013. Mandamus is the sole mechanism available to obtain that relief, and the Court should grant this petition.

## ISSUES PRESENTED

1.       Did the USPTO violate due process by applying its "settled expectations" rule post-hoc to pre-filed petitions?

2.       Did the USPTO violate the APA by applying its "settled expectations" rule post-hoc, without authority and without considering relevant concerns?

3.       Did the USPTO violate the APA and AIA by skipping notice-and-comment procedures for its "settled expectations" rule—a new IPR limit determining stakeholder rights?

4.       Did the USPTO exceed its authority—violating the APA and the Constitution's separation of powers—by inventing an extra-statutory "settled expectations" rule for "old" patents?

# BACKGROUND

## I.     Congress established IPR, and the USPTO created its own IPR institution criteria without notice and comment.

In enacting the AIA, Congress recognized "questionable patents" were "too easily obtained" and "too difficult to challenge." H.R. Rep. No. 112-98, at 39-40 (2011). Congress therefore established IPR, allowing anyone to petition the USPTO to conduct a limited review of granted patents. 35 U.S.C. §311. In the 9 months following patent issuance, a different form of USPTO review is available: post-grant review (PGR). *Id.*, §§321-329. After 9 months, Congress made patents eligible for IPR—with no maximum patent age. *Id.*, §311.

Congress instructed the Director to institute an IPR if "there is a reasonable likelihood that the petitioner would prevail." *Id.*, §314(a), and authorized the Director to "prescribe regulations" providing "the standards" for "showing" "sufficient grounds to institute a review under section 314(a)." *Id.*, §316(a)(2).

The USPTO repeatedly began—and abandoned—the notice-and-comment process to "prescribe regulations." In 2023, it issued an advance notice of proposed rulemaking. 88 Fed. Reg. 24,503 (Appx031-046). In 2024, it issued a notice of proposed rulemaking. 89 Fed. Reg. 28,693 (Appx047-060). In 2025, it reiterated plans "to pursue notice-and-comment rulemaking." Theresa Schliep, *Patent Office Plans Rulemaking For New PTAB Denial Process*, Law360, https://www.law360.com/articles/2324147 (Apr. 17, 2025). Appx460-461. But

8

these false-starts are the sum total of the USPTO's efforts.  No actual notice-and-comment regulation has issued.

Instead, the USPTO resorted to "precedential" decisions and "guidance" documents.  It designated as precedential the "*Fintiv* factors" as governing IPR institution in the face of parallel district-court litigation.  *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, 2020 WL 2126495, at \*2 (PTAB Mar. 20, 2020) (precedential).  It then "issue[d] binding agency guidance" governing institution, reaffirming the *Fintiv* factors.  Appx024 (Memorandum from USPTO Director to PTAB, *Interim Procedure* for *Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation* (June 21, 2022) (Appx022-030)).  At the same time, it announced limits on its own discretion: "the PTAB will not discretionarily deny institution in view of parallel district court litigation" if a petitioner "stipulat[es] not to pursue in a parallel proceeding" grounds "that could have reasonably been raised before the PTAB."  Appx024 (a so-called "*Sotera* stipulation").  These rules were in place when Petitioner filed its IPR petitions, and upon which Petitioner relied when paying the filing fees.

## II.    Petitioner filed IPR petitions.

In February 2024, Applied Optoelectronics, Inc. sued Cambridge Industries USA Inc. alleging infringement of eight patents concerning optoelectronics modules.  Appx430-445.

9

On January 17, 2025, Petitioner filed IPR petitions challenging five of those patents, including two[6] that are the subject of this petition. Appx075-126, Appx228-303. Petitioner paid $41,500 in non-refundable filing fees each (Appx426, Appx428 (receipts), *see also* Appx427, Appx428) and incurred substantial costs preparing the petitions and supporting declarations.

Petitioner and Patent Owner jointly informed the district court regarding submission of the five IPRs. Appx446-449. Shortly thereafter, the court stayed the litigation. Appx450-451. Petitioner's stipulation in accordance with *Sand Revolution II LLC*, while less preferred than a *Sotera* stipulation, played no part in the Acting Director's decision. Appx001-004, Appx008-011; *see Apple Inc. v. Koss*, IPR2021-00255, Paper 22 at 18-10 (P.T.A.B. June 3, 2021).

### III.    After the IPR petitions were filed, and without notice and comment, the USPTO invented a new and evolving "settled expectations" rule.

After Petitioner's filings, the USPTO upended its existing institution criteria with a stream of new pronouncements. In February 2025, the USPTO rescinded the 2022 guidance in a website post. Appx061-062. On March 24, the Chief Administrative Patent Judge issued a memo with new institution rules. Appx063-065. Two days later, the Acting Director issued another memo with additional rules.

---

[6] The challenged patents are U.S. Pat. Nos. 9,523,826 (Appx127-138) and 10,042,116 (Appx304-319).

Appx066-068.  That memo announced a new "discretionary consideration": the parties' "[s]ettled expectations," "such as the length of time the claims have been in force."  Appx067.  The memo explained nothing further about that factor, such as what "length of time" qualifies or what support that criterion has in the AIA.  These official actions were taken without notice-and-comment rulemaking, despite the USPTO's statutory obligations and repeated commitments to pursue that path.

In June 2025[7], again without notice and comment, the Acting Director denied IPR institution for the first time on the ground that "the challenged patent has been in force" too long, "creating settled expectations."  *Dabico Airport Sols. Inc. v. AXA Power ApS*, IPR2025-00408, Paper 21, at 2 (AD June 18, 2025) (Appx070-074); *see* Appx072 ("the longer the patent has been in force, the more settled expectations should be").  She further declared this rule applies irrespective of "actual notice of a patent or of possible infringement."  *Id.*  Nine days later, the Acting Director discretionarily denied Petitioner's two IPRs for "settled expectations."

Thereafter, the Acting Director, relying on her newly-minted rule, issued a rash of institution denials (with an emerging pattern roughly tracking a patent's six-

---

[7] By then, briefing was complete.  *See* Appx139-172, Appx173-198, Appx320-366, Appx367-394.

year mark). *See* Appx452-454 (article)[8]; *Amazon.com, Inc. v. VirtaMove, Corp.*, IPR2025-00561, 2025 WL 1913383 (AD July 11, 2025) ("settled expectations" sole reason justifying denial).[9]

The agency now updates its institution guidance on a rolling basis through a website.[10]

---

[8] Ryan Davis, *Stewart Says New Patent Policies Aim to Bring Stability*, Law360 (Sept. 8, 2025), *available at* https://www.law360.com/articles/2364638/stewart-says-new-patent-policies-aim-to-bring-stability (Appx452-454).

[9] Further examples include: *Sig Sauer Inc. v. Lone Star Future Weapons*, IPR2025-00410, 2025 WL 1773118 (AD June 26, 2025); *Samsung Elecs. Co. v. Sinotechnix LLC*, IPR2025-00331, 2025 WL 1836417 (Acting Deputy Chief APJ July 2, 2025); *Apotex Inc. v. Alkermes Pharma Ireland Ltd.*, IPR2025-00514, 2025 WL 1853593 (AD July 2, 2025); *Samsung Elecs. Co. v. Mobile Data Techs., LLC*, IPR2025-00535, 2025 WL 1908154 (Acting Deputy Chief APJ July 10, 2025); *NXP USA, Inc. v. Redstone Logics LLC*, IPR2025- 00485, 2025 WL 1909554 (AD July 10, 2025); *SAP Am., Inc. v. Valtrus Innovs. Ltd.*, IPR2025-00414, 2025 WL 1909114 (AD July 10, 2025); *Caihong Display Devices v. Corning, Inc.*, IPR2025-00439, 2025 WL 1912302 (AD July 10, 2025); *Google LLC v. VirtaMove, Corp.*, IPR2025-00487, 2025 WL 1913566 (AD July 11, 2025); *KingstonTech. Co. v. Vervain, LLC*, IPR2025-00614, 2025 WL 1953666 (AD July 16, 2025); *Analog Devices, Inc. v. Number 14 B.V.*, IPR2025-00550, 2025 WL 1953257 (AD July 16, 2025); *Kangxi Commc'n Techs. v. Skyworks Sols., Inc.*, IPR2025-00372, 2025 WL 1959071 (AD July 16, 2025).

[10] *See* Interim Director Discretionary Process, USPTO.gov, available at https://www.uspto.gov/patents/ptab/interim-director-discretionary-process.

### IV. The USPTO denied institution here based solely on "settled expectations."

On June 27, 2025, the Acting Director rejected Petitioner's IPR petitions noting that "patents challenged in IPR2025-00433 and IPR2025-00435, … have been in force for nine and seven years, respectively, and not from the same patent family as those in IPR2025-00434, IPR2025-00436, and IPR2025-00437. Accordingly, Patent Owner's settled expectations as to the patents challenged in IPR2025-00433 and IPR2025-00435 are stronger and discretionary denial is appropriate as to these proceedings." Appx003, Appx010. While characterizing her "determination" as "a holistic assessment," the Acting Director identified ***no other basis*** favoring denial than "settled expectations" based on the patents' age. Appx002-003, Appx009-010. Despite admitting that the agency's prior *Fintiv* guidance supported review (because "there is no currently scheduled trial date in the co-pending district court litigation"), she never justified departing from that standard and imposing the agency's new "settled expectations" rule on these IPR petitions retroactively.

### STANDARD OF REVIEW

This Court has "jurisdiction to review any petition for a writ of mandamus denying institution of an IPR." *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1381 (Fed. Cir. 2021). A petitioner must show "a clear and indisputable legal right," the lack of "other adequate method of obtaining relief,"

13

and the writ's "appropriate[ness]" "under the circumstances." *Id.* at 1382.

## REASONS WHY THE WRIT SHOULD ISSUE

### I.    The USPTO's errors are clear and indisputable.

A "reviewing court shall" "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. §706(2).  On four independent grounds, the USPTO's new "settled expectations" rule is unlawful and must be set aside: (1) its retroactive application violated due process; (2) its retroactive application exceeded statutory authority and was arbitrary and capricious; (3) the agency ignored notice-and-comment procedures; and (4) the new institution criterion exceeds statutory authority and the agency's constitutional power.

### A.    The USPTO violated due process by retroactively applying a new bar to these IPR petitions.

According to the USPTO, the "settled expectations" rule barred Petitioner's IPRs because the patents were too "old."  Yet that restriction did not exist when the petitions were filed.  Instead, by the time the USPTO unveiled its new rule, it was far too late for Petitioner to satisfy the rule by (somehow) petitioning when the patents were younger.  Moreover, it was too late for Petitioner to recover its $41,500 in wasted fees filed in reliance on the then-controlling rules.

14

The USPTO's retroactive application of the "settled expectations" rule flouts due process. "Retroactivity is not favored in the law." *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1362 (Fed. Cir. 2005) (citation omitted). "The Due Process Clause limits the extent to which the Government may retroactively alter the legal consequences of an entity's or person's past conduct." *PHH Corp. v. CFPB*, 839 F.3d 1, 46-47 (D.C. Cir. 2016) (Kavanaugh, J.), *order vacated* (Feb. 16, 2017), *reinstated in relevant part*, 881 F.3d 75, 83 (D.C. Cir. 2018). "Due process therefore requires agencies to 'provide regulated parties fair warning of the conduct a regulation prohibits or requires.'" *Id.* (citation omitted). And "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984).

This Court, applying the "retroactivity doctrine," examines the "'nature and extent of the change in the law,' 'the degree of connection between the operation of the new rule and a relevant past event,' and 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Princess Cruises*, 397 F.3d at 1362, 1364 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)). "If, under this test, a rule or regulation appears to have a retroactive effect, then the rule or regulation cannot be applied to cases pending at the time of its promulgation."

*Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008).

For example, in *Princess Cruises*, this Court held it impermissible to apply an agency ruling to conduct ***preceding*** the ruling (which imposed a new standard governing cruise-ship taxes and evidentiary presumption). 397 F.3d at 1363-67. The new ruling qualified as a significant change in law because it created an evidentiary presumption "nowhere to be found in" the "statute or regulations." *Id.* at 1365. The ruling disadvantaged parties for past conduct: cruise lines had not kept records to meet the new evidentiary presumption. *Id.* at 1366. And it would have been unfair to apply the new rule to conduct that had already occurred. *Id.*

Similarly, a "new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime." *Landgraf*, 511 U.S. at 275 & n.29. So too for a new limit on notices of appeal "if it would render invalid a notice that was valid when filed." *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005); *see also Woodward v. DOJ*, 598 F.3d 1311, 1315 (Fed. Cir. 2010) (new burden of proof cannot be applied to already-pending case).

The USPTO violated those anti-retroactivity principles here. It did just what the Supreme Court and this Court have denounced: imposing a new constraint on already-filed IPR petitions (just like complaints or notices of appeal) is impermissible. *See Landgraf*, 511 U.S. at 275; *Durr*, 400 F.3d at 1380.

16

Applying the "settled expectations" rule here violates every prong of this Court's retroactivity framework. To begin, a "settled expectations" rule is "nowhere to be found in" the "statutes or regulations" and thus effects a significant change in law. *Princess Cruises*, 397 F.3d at 1365.

Next, applying this change disadvantaged Petitioner for past events. *See id.* at 1366. The "settled expectations" rule penalizes Petitioner for not petitioning for IPR sooner, before the patents gained "settled expectations." Yet Petitioner had no idea it needed to do this. To the contrary, as in *Princess Cruises*, there was a "common [industry] understanding" that parties "had no need to" do what the agency's new rule required. *Id.*

Had Petitioner known the yet-unannounced rule, it would not have filed the subject IPR petitions, at considerable cost and expense, as being futile.

The USPTO's surprise new rule also destroyed reasonable reliance interests. Petitioner detrimentally relied on the institution standards existing when it filed for IPR. Under those standards, the petitions were meritorious. The USPTO's decision shows as much: it mustered no reason for denying institution besides the new "settled expectations" rule. Appx002-003, Appx009-010. The USPTO even acknowledged the *Fintiv* inquiry *supported* institution (because parallel litigation was already stayed). *Id.*; *see Fintiv*, 2020 WL 2126495, at *2-3. Petitioner had an especially strong expectation that those pre-existing standards would apply because

17

the USPTO had repeatedly indicated that any change would come through notice-and-comment rulemaking—and the proposed rules never mentioned "settled expectations." *See supra* at *7; 88 Fed. Reg. 24,503 (Appx031-046) (discussing institution discretion and stating "USPTO intends to make policy changes through notice-and-comment rulemaking"); 89 Fed. Reg. 28,693 (Appx047-060) (proposing rules for institution discretion).

The USPTO offered no legal basis for the "settled expectations" rule or its retroactive application, either in its discretionary decisions, its earlier cited decision, or its denial of Petitioner's rehearing requests. Appx002-003, Appx009-010; *Dabico*, IPR2025-00408, Paper 21, at 2-3 Appx071-072. Nor is any justification possible. It is unreasonable to induce payment of $41,500 in fees by announcing one set of institution standards, only to deny petitions under a later harsher standard.

All that is more than enough to establish a violation of due-process anti-retroactivity principles. *Princess Cruises*, 397 F.3d at 1362; *Rodriguez*, 511 F.3d at 1153. No analysis of other due-process frameworks is necessary. *GPX Int'l Tire Corp. v. United States*, 780 F.3d 1136, 1141 (Fed. Cir. 2015) (when party challenges a law "because it operates retroactively," "we do not think that the outcome of the due process analysis depends upon a determination that a vested right exists").

Yet other frameworks provide the same result. The USPTO impaired protected interests. Money is property, and Petitioner lost property— sizeable filing

fees—it would not have paid had it known of the USPTO's new rule.  And the USPTO subverted Petitioner's property and liberty interests in having its petitions adjudicated fairly under the then-existing standards.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429-30 (1982) ("[The] Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be the equivalent of denying them an opportunity to be heard upon their claimed rights." (citation and alterations omitted)).  Petitioner received no notice or opportunity to be heard "at a time when the deprivation c[ould] still be prevented"—that is, before filing the IPR petitions.  *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972).  Whether assessed as a deprivation of property and liberty without notice and opportunity to be heard, or as a violation of anti-retroactivity doctrine, the use of the "settled expectations" rule retroactively here was impermissible.

> **B.**  **The USPTO violated the APA by retroactively applying the "settled expectations" rule without authority or reasoned decision-making.**

Retroactively applying the "settled expectations" rule also violated bedrock APA requirements.  The USPTO lacked statutory authority to regulate retroactively, 5 U.S.C. §706(2)(A)-(C), and in any event failed to consider crucial factors, §706(2)(A), (D).

An agency lacks "power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 292 (D.C. Cir. 2023).  The AIA confers no power—let alone in express terms—to make IPR rules retroactive.  Yet the USPTO retroactively penalized Petitioner for noncompliance with a post-hoc rule as just discussed—including by requiring IPR filings years before the rule existed.  *Supra* 16-17.

The USPTO also acted arbitrarily and capriciously, ignoring its basic "mandate to engage in reasoned decision-making under the APA."  *In re Brunetti*, — F.4th—, 2025 WL 2446503, at *7-8 (Fed. Cir. Aug. 26, 2025) (precedential). Agencies must "develop coherent and rational rules" and "articulate a satisfactory explanation for [an] action including a rational connection between the facts found and the choice made."  *Id.* at 7 (citation and quotation marks omitted).  Changing policy requires "provid[ing] a reasoned explanation for the change, display[ing] awareness that they are changing position, and consider[ing] serious reliance interests."  *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) (citation and alterations omitted).

The USPTO failed to justify its post-hoc imposition of "settled expectations." No "reasoned explanation" for retroactive application was proffered.  *Supra* 17.

Indeed, the USPTO failed to address *any* relevant consideration.  It never

acknowledged that such a rule never before existed, let alone "display[ed] awareness" of a changed position. *Wages & White Lion*, 604 U.S. at 568. It mentioned no effect on Petitioner or "reliance interests." *Id.* It never articulated when "settled expectations" arise, leaving stakeholders to scour dozens of decisions to divine some pattern. *Brunetti*, 2025 WL 2446503, at *8 (agencies may not take "an 'I know it when I see it' approach").

And the agency ignored a basic logical flaw underlying its new rule. Patentees had no "settled expectation" that old patents were immune from challenge until the USPTO decreed it. Parties were always free to challenge a patent's validity, no matter how old. Even today, that remains true in district-court litigation. So patentees could not reasonably have developed "settled expectations" (and much less for IPRs alone). And it was impossible for Petitioner to anticipate that the USPTO would create such a rule and impose it retroactively.

The USPTO failed to confront any of those issues. It did not and cannot identify any statutory authority or reasoned justification for imposing its new rule retroactively on Petitioner. That APA violation warrants mandamus.

## C. The USPTO violated the APA and AIA by imposing a limitation on institution without notice-and-comment rulemaking.

The "settled expectations" rule violates another basic administrative-law requirement. Notice and comment "assure[s] fairness and mature consideration of

rules of general application." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969). Agency action disregarding that procedural requirement must be set aside. *See, e.g.*, *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*, 464 F.3d 1306, 1317 (Fed. Cir. 2006). The "settled expectations" rule, imposed without notice-and-comment, violates the APA and AIA and should be set aside.

The APA requires notice-and-comment rulemaking for substantive rules. 5 U.S.C. § 553. The APA defines as a "rule" any "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." §551(4). Substantive rules, but not "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," require notice and comment. §553(b). Rules are "substantive" if they "effect a change in existing law or policy" or "affect individual rights and obligations." *Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998). The USPTO's "settled expectations" rule is a rule; it applies generally and prospectively to every IPR petition, and prescribes a concrete time limit on IPR.

The rule is substantive many times over. To begin, it "change[s] existing law and policy," *id.*, by introducing a never-seen-before IPR precondition. Indeed, the agency has been open about a new policy approach. Appx453 (announcing that the USPTO, under current leadership, "has focused on liberally permitting early challenges to patent validity" but believes "the longer a patent has been in force, the

22

stronger and more settled the patent owner's expectations should be").

Moreover, the "settled expectations" rule affects patent challengers' rights by creating a new ground for depriving opportunities to seek patent cancellation through IPR. The USPTO's substantive judgment here that the patents engendered "settled expectations" worth preserving was its only reason for denying IPR. Appx002-003, Appx009-010. Such a rule, which "affects the substantive … standards by which the [agency] examines a party's application" is a substantive rule. *In re Chestek PLLC*, 92 F.4th 1105, 1109 (Fed. Cir. 2024); *see also Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1046 (D.C. Cir. 1987) (establishing "factors for determining … eligibility" for relief is "the classic example" of a substantive rule); *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1112-13 (D.C. Cir. 1974); *AFL-CIO v. NLRB*, 57 F.4th 1023, 1041 (D.C. Cir. 2023); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 382-83 (D.C. Cir. 2002); *Reeder v. FCC*, 865 F.2d 1298, 1305 (D.C. Cir. 1989).

The rule substantively affects patent owners and the public by establishing a category of "old" patents that are protected against IPR. It also overrides Congress's substantive decisions not to impose a patent-age cap for IPR eligibility or a presumption of validity for older patents. And it affects challengers' rights and obligations by requiring premature IPR challenges early in a patent's life, or forfeiture of IPR rights.

Additionally, the rule operated substantively especially because the USPTO imposed it retroactively.  Notice and comment is required "[w]hen a rule prescribes a timetable for asserting substantive rights," and "the time allotted is so short as to foreclose effective opportunity to make one's case on the merits." *Lamoille Valley R.R. Co. v. I.C.C.*, 711 F.2d 295, 328 (D.C. Cir. 1983).  The rule here had the same effect.  By creating a retroactive deadline to challenge patents that was impossible for IPR Petitioner to meet, the USPTO foreclosed IPR Petitioner's opportunity to make its case on the merits.  That is another substantive effect that required fair and thorough consideration via notice and comment.  *Id.*

Finally, the AIA itself separately requires notice and comment in this specific context.  The AIA commands that in "setting forth the standards for the showing of sufficient grounds to institute" IPR, the agency "shall prescribe regulations." §316(a)(2); *see also* §312(a)(4) (requiring that requirements for IPR petitions, beyond those already enumerated in §312(a), be established "by regulation").  That means notice-and-comment rulemaking.  "[W]hen a statute defines a duty in terms of agency regulations, those regulations are considered legislative rules," which must be issued "pursuant to the [APA's] notice-and-comment requirements." *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 38, 40 (D.C. Cir. 2005); *see MST Exp. v. Dep't of Transp.*, 108 F.3d 401, 402 (D.C. Cir. 1997) (agency conceded that statute requiring prescribing standard "by regulation" requires notice-and-comment

rulemaking). This was the backdrop against which Congress enacted §316(a). *Cf. Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1350 (Fed. Cir. 2020) ("There is no indication in the [IPR] statute that Congress … intended [the Director] to engage in any rulemaking other than through the mechanism of prescribing regulations."); *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1332 (Fed. Cir. 2017) (en banc) (Moore, J., concurring) (noting agreement among "majority" of en banc Court that where §316 "delegates to the Director the authority *to prescribe regulations* adopting standards, only notice and comment rulemaking by regulation will be given *Chevron* deference"). The USPTO has no excuse for failing to follow this basic procedure.

The resulting chaos highlights the need for notice-and-comment rulemaking. Nobody knows exactly when "settled expectations" attach; whether the strength of an IPR petition on the merits matters; or whether today's rules will apply tomorrow. The law demands more. The USPTO, like all agencies, must follow notice-and-comment procedures to ensure "fairness and mature consideration." *Wyman-Gordon Co.*, 394 U.S. at 764.

> **D.** **The USPTO exceeded its authority—in violation of the APA and the Constitution—by inventing an IPR institution criterion untethered to the AIA.**

The "settled expectations" rule's most fundamental defect is that the USPTO lacked authority to create it at all. The AIA does not authorize the Director to invent

25

institution criteria unmoored from the statute; and it certainly does not authorize a maximum-patent-age cap on IPR.  In imposing the "settled expectations" rule, the USPTO exceeded its statutory authority and usurped Congress's legislative power. 5 U.S.C. §706(2).

### 1.    Congress did not empower the Director to create extra-statutory institution criteria.

Contrary to the USPTO's belief, the Director does not have unfettered discretion at the institution stage. Congress outlined specific institution criteria for the Director to consider.  *E.g.*, §§314(a), 315(d), 325(d).  It granted discretion in applying some of *those* criteria, as well as limited authority to promulgate "regulations" implementing *those* criteria (§316(a)(2)).  Yet the USPTO believes the Director has unfettered discretion to invent *any* criteria it desires—even with no basis in the AIA.  *See* AD's Resp., *In re Motorola Solutions*, No. 25-134, ECF No. 28 at 8 (Fed. Cir. Aug. 4, 2025) (institution "criteria" is "entirely within the Director's discretion").  This is lawless.  Congress did not legislate a detailed framework for the USPTO to simply disregard.  While this Court has occasionally assumed the Director has broad institution discretion, it has not squarely decided the bounds of that authority in the face of the arguments presented here.  *E.g.*, *Mylan*, 989 F.3d at 1382; *Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018).  This fundamental question needs a considered answer.  This Court should confirm the Director's power is limited by Congress's design.

26

In the AIA, Congress instructed the agency to *apply* statutory requirements, not create new ones. It specified the core merits threshold in §314(a); it instructed parties to address the "requirement[s] *of this chapter*" (§313 (emphasis added)); and it set forth other reticulated considerations. Some are firm bars (§315(b)'s time limit and §315(e)'s estoppel). Some are discretionary considerations (§315(d)'s docket-management authority and §325(d)'s anti-duplication authority). Congress did not do that work so the USPTO could rewrite the scheme on the Director's whim.

The Director has broad "discretion" within the AIA's statutory markers. *Cuozzo*, 579 U.S. at 273, but discretion *within* markers is not discretion to fashion new boundaries. The AIA nowhere grants the USPTO power to ignore Congress's framework and invent *new* criteria. "Administrative agencies are creatures of statute"; they "possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022).

Congress carefully specified when the Director may exercise discretion in IPR institution. In §325(d), for example, Congress provided that, in instituting any "proceeding under this chapter" (including IPRs), the Director "may" consider whether "the same or substantially the same prior art or arguments previously were presented to the Office." §325(d). Congress granted the Director discretion in applying that criterion (the Director "may" reject a petition). And it authorized

27

accompanying regulations to flesh out the standard. §316(a)(2). Those regulations must consider effects on "the patent system" (by avoiding inconsistent outcomes on the same prior art or arguments) and "efficient [agency] administration" (by avoiding redundant proceedings). §316(b). But none of this matters, if as the USPTO believes, it already has unfettered discretion to consider anything it chooses at institution; it does not need §325(d)'s *redundant* authority to do the same thing. That express section is not a mere suggestion (at best) or superfluous (at worst). *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995) (avoiding such "redundan[cy]").

Likewise under §315(d), Congress authorized the USPTO to "stay, transfer, consolidat[e], or terminat[e]" related proceedings. [11] That expressly authorizes the Director to manage the agency's docket when overlapping proceedings are pending before the agency. Here too, Congress granted discretion in applying that criterion (the Director "*may* determine" how such proceedings "*may* proceed" (emphasis added)), and authorized implementing regulations. §§316(a)(2), (b). Yet none of that is necessary under the USPTO's unbounded approach.

The USPTO invokes §314(a) as the source of the Director's discretion. *See* AD's Resp., *In re SAP Am., Inc.*, No. 25-132, ECF No. 39 at 12 (Fed. Cir. July 18, 2025); *see also* Appx002-003, Appx009-010 (denying petitions under §314(a)); Appx066 (identifying §314(a) as authority for Director's "discretion"); *Fintiv*, 2020

---

[11] Section 325(d) includes nearly identical language for PGRs.

WL 2126495, at *2.  But that subsection grants no such authority.  Section 314(a) textually imposes a direct critical threshold for institution: "a reasonable likelihood that the petitioner would prevail."  It does not grant the Director boundless authority to impose *any* criteria the Director wishes—much less to abridge the universal "scope" of IPR (§311(b)).  A provision that speaks in the negative and limits the Director's discretion cannot be construed as a sweeping, affirmative grant of power to deny IPR based on *any* criteria the Director chooses.

Congress's express grant of discretion in two accompanying AIA sections confirms it did not grant the USPTO the broader discretion seized here.  For derivation proceedings, Congress provided "the Director *may* institute" if the requisite "standards … are met." §135(a)(1) (emphasis added).  Similarly, for joinder petitions, "the Director, *in his or her discretion*, *may* join" parties otherwise satisfying §314. §315(c) (emphasis added).  No comparable authority exists for IPR institution.  "When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023); *see also Gallo v. Dep't of Transp.*, 725 F.3d 1306, 1310 (Fed. Cir. 2013) (expressio unius).  Congress expressly conferred discretion elsewhere in the AIA, but not for instituting IPRs; the Court should enforce that congressional choice.

### 2.    Congress did not authorize the Director to deny institution because a patent is "old."

The USPTO's new "settled expectations" rule falls well beyond the AIA's institution criteria and conflicts with express congressional judgments in the AIA. The AIA contains no cap on how "old" a patent may be to remain IPR-eligible, reflecting a deliberate congressional design decision, confirmed elsewhere.

First, Congress used a patent-age cutoff for IPR's predecessor (*inter partes* reexamination) and IPR's AIA counterpart (PGR), but not IPR. Under the prior scheme, Congress had excluded certain older patents from *inter partes* reexamination. It limited eligibility to patents issued on applications "filed . . . on or after" November 29, 1999, the act's effective date. American Inventors Protection Act of 1999, Pub. L. No. 106–113, §4608, 113 Stat. at 1501A–572. But when Congress replaced *inter partes* reexamination with IPR, it imposed no such age cutoff. Yet Congress chose differently for PGR, imposing an age cutoff there. *See* AIA §3(n)(1) (limiting PGR to patents with an effective filing date on or after March 16, 2013). Thus, for IPRs, Congress expressly *rejected* the same sort of categorical "old-patent" exclusion the Director has now implemented.

Second, Congress imposed a continuing patent-age cap for PGR but not IPR. PGR is available only until the patent is 9 months old. §321(c). IPR has no maximum age. The USPTO has no license to disregard Congress's deliberate balance. Moreover, Congress chose a uniform, weaker presumption of validity in

IPR. §§316(e), 282; *see Cuozzo*, 579 U.S. at 279.  All patent claims, no matter their age, face cancellation in IPR under a lower preponderance-of-the-evidence threshold.  *Id.*  Congress created no extra presumption of validity for older patents.

The USPTO cannot invent its own rules to frustrate congressional intent.  5 U.S.C. §706(2)(A), (C).  The USPTO's new "settled expectations" rule creates a patent-age cap to IPR and an artificial presumption of validity for "old" patents.  Appx002-003, Appx009-010.  That rule flouts Congress's choices, violates the separation of powers, and is a wholly illegitimate basis for denying IPR.

## II.    The remaining mandamus criteria are satisfied.

### A.    The USPTO's errors are reviewable in mandamus.

When the USPTO exceeds legal constraints in denying institution, this Court applies mandamus review.  *Mylan*, 989 F.3d at 1380.  "In fact, when the Board denies institution, our mandamus jurisdiction is especially important."  *Id.*  The appeal bar in §314(d) does not "divest[] [this Court] of mandamus jurisdiction."  *Id.*  Section 314(d) therefore does not bar mandamus review of Petitioner's claims.

*First*, the USPTO's violations of constitutional constraints (due process and separation of powers) are subject to mandamus review.  *Mylan*, 989 F.3d at 1382-83.

*Second*, its APA violations in regulating retroactively are reviewable.  Despite §314(d), "judicial review remains available consistent with the [APA], which directs

courts to set aside agency action 'not in accordance with law' or 'in excess of statutory jurisdiction, authority, or limitations.'" *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 371 (2018) (quoting 5 U.S.C. §706(2)(A), (C)). Section I.B, *supra*, rests on the APA's requirements that the agency not exceed delegated authority and consider relevant factors. This is not a challenge "where the invoked provisions of law directly govern institution." *Apple Inc. v. Vidal*, 63 F.4th 1, 11-14 (Fed. Cir. 2023).

*Third*, the agency's notice-and-comment obligations are reviewable. As this Court already explained, §314(d) does not reach "the Director's choice of whether to use notice-and-comment rulemaking." *Id.* at 14-15.

While *Mylan* rejected a notice-and-comment challenge to a USPTO decision, it did so on the merits: the mandamus petitioner had not established "a clear and indisputable right to relief." 989 F.3d at 1382; *id.* (not "explor[ing] the outer contours of possibility" for mandamus); *Apple*, 63 F.4th at 12 n.5 (characterizing *Mylan* as "holding mandamus standard not met for challenge to denial based on *Fintiv* instructions"). The *Mylan* petitioner only offered a few relevant sentences in the introduction and background sections of its briefing. *See* Opp. to Mot. to Dismiss, *Mylan Labs. Ltd. v. Janssen Pharma., N.V.*, No. 21-1071, ECF No. 16 at 1, 5-6 (Fed. Cir. Dec. 7, 2020). That petitioner's case-specific failure does not insulate the USPTO from review here.

*Fourth*, this Court can stop the agency from engaging in *ultra vires* conduct. Judicial review is available for situations such as these, where the USPTO has "exceeded [its] statutory authority." *SAS*, 584 U.S. at 371; *see also Cuozzo*, 579 U.S. at 275; 5 U.S.C. §706(2). The "shenanigans" here are obvious. The Acting Director had been open about her disagreement with Congress's IPR system—"the low preponderance of evidence standard" and the lack of any "window of time that closes to stop these challenges." Appx452. Those are *features* of the statutory design. Yet the Acting Director has wielded institution power to *frustrate* them.

The agency-power challenge here falls outside §314(d), which bars review of "'an ordinary dispute about the application of' an institution-related statute." *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 54 (2020) (quoting *Cuozzo*, 579 U.S. at 271); *see, e.g.*, *id.* (§315(b)); *Cuozzo*, 579 U.S. at 271 (§312(a)(3)); *ESIP Series 2, LLC v. Puzhen Life USA, LLC*, 958 F.3d 1378, 1385-86 (Fed. Cir. 2020) (§312(a)(2)). The issue here goes well beyond case-specific interpretation or application of institution criteria.

This Court retains the ability to answer the fundamental question of the agency's authority to create institution standards in the first place. "§314(d) does not 'enable the agency to act outside its statutory limits.'" *SAS*, 584 U.S. at 371 (quoting *Cuozzo*, 579 U.S. at 275); *see* 5 U.S.C. §706(2). This reflects a deeply rooted principle: "courts have recognized that an implicit and narrow exception to

[a] bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996); *see Leedom v. Kyne*, 358 U.S. 184 (1958). This case fits squarely within that preservation of judicial review. The Acting Director's creation of new, extra-statutory criteria is a "blatant violation[] of [a] legal constraint[]" that activates judicial review. *See IGT v. Zynga Inc.*, 144 F.4th 1357, 1367 (Fed. Cir. 2025).

Nor are any of this Court's decisions to the contrary. *Apple* preserved mandamus review. 63 F.4th at 12 n.5 (reserving "'whether mandamus might be available in an extraordinary case,'" since *Apple* was "not a mandamus case" (quoting *Thryv*, 590 U.S. at 54 n.6)), nor did it address a challenge to underlying agency power. *Apple* did not address whether Congress granted the Director unilateral authority to create institution criteria outside the AIA's statutory framework. *Taylor Energy Co. v. Dep't of the Interior*, 990 F.3d 1303, 1310, n.1 (Fed. Cir. 2021) ("[W]hen an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises." (citation omitted)).

Nor does *Mylan* bar review here. *Mylan* had no need to scrutinize the Director's institution authority because all involved *presumed* the Director was "free" to refuse institution based on "reasons of administrative efficiency." 989 F.3d

34

at 1382 (citing *Heckler v. Chaney*, 470 U.S. 821, 830-32 (1985)).  Petitioner here, by contrast, squarely raises whether the agency in fact has discretion to fashion new rules that conflict with the congressional scheme.  It is well-settled that "Congress may limit an agency's exercise of enforcement power" "by setting substantive priorities" or "by otherwise circumscribing an agency's power to discriminate among . . . cases it will pursue."  *Heckler*, 470 U.S. at 833.  Here, Congress set boundaries that the agency has disregarded, requiring mandamus.

If, however, the Court believes these fundamental questions are somehow unreviewable under existing circuit law, the Court should revisit those decisions en banc—initially or otherwise.

### B.    Petitioner has no other adequate means of relief.

Mandamus is the proper mechanism for "judicial review" of "decisions denying institution," "[g]iven that there is no adequate remedy by way of direct appeal," which this Court holds is barred by §314(d).  *In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022) (citation omitted).

### C.    Mandamus is appropriate under the circumstances.

Mandamus is a critical check on unlawful agency action.  It is appropriate "to decide 'basic' and 'undecided' questions" and "to further supervisory or instructional goals where issues are unsettled and important."  *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018) (quoting *Schlagenhauf v. Holder*, 379 U.S.

104, 110 (1964) and *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed. Cir. 2016)).  Mandamus is also warranted when "important to 'proper judicial administration.'" *In re Cray Inc.*, 871 F.3d 1355, 1358-59 (Fed. Cir. 2017) (quoting *Schlagenhauf*, 379 U.S. at 110 and *In BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011)).

This case presents basic, undecided questions regarding the USPTO's authority to rewrite Congress's institution standards and impose, post-hoc, an extra-statutory "settled expectations" rule.  *See BigCommerce*, 890 F.3d at 981.  Those questions implicate the core functioning of Congress's patent system and IPR scheme.  *See Cray*, 871 F.3d at 1358-59.  These actions have sweeping consequences for an overwhelming number of stakeholders.  The USPTO's refusal to stay within statutory bounds and follow notice-and-comment procedures has produced turmoil.  Anything the USPTO says today could be reversed via website post tomorrow (at the whim of a current or future Director), making informed decisions impossible for IPR Petitioners, patent owners, and investors and creating serious instability in the patent system.

## CONCLUSION

The Court should grant this petition and vacate the two non-institution decisions.  The Court should direct the USPTO to reconsider institution solely under the statutory criteria, not the agency's extra-statutory framework.  At a minimum,

the Court should direct the USPTO to reconsider institution without the USPTO's new "settled expectations" rule and solely under the guidance in place when the petitions were filed.

Dated:  October 10, 2025                          Respectfully Submitted,

                                                 COZEN O'CONNOR

                                                 */s/ Nicola A. Pisano*
                                                 Nicola A. Pisano
                                                 Regis C. Worley, Jr.
                                                 501 West Broadway, Suite 1610
                                                 San Diego, CA 92101
                                                 619-234-1700

                                                 *Attorneys for Petitioner*
                                                 *Cambridge Industries USA Inc.*

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Fed. R. App.

P. 21(d) because:

■      this petition contains 7,573 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

■      this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Times New Roman font.

*/s/ Nicola A. Pisano*
Nicola A. Pisano

## PROOF OF SERVICE

I certify that on October 10, 2025, I caused a paper copy of this document (and the attached appendix, entry of appearance, certificate of interest, and notice of related cases) to be sent by express carrier to lead counsel for respondent Applied Optoelectronics, Inc. at the following address:

>Jo Dale Carothers (Reg. No. 74,180)
>Weintraub Tobin Law Corporation
>400 Capitol Mall, 11th Floor
>Sacramento, CA 95814

I further certify that I caused courtesy electronic copies of this document (and the attached appendix, entry of appearance, certificate of interest, and notice of related cases) to be sent to Jo Dale Carothers, Esq., jcarothers@weintraub.com and additional counsel of record for respondent:

>Eric Caligiuri, ecaligiuri@weintraub.com

I further certify that I caused an electronic copy of this document (and the attached appendix, entry of appearance, certificate of interest, and notice of related cases) to be sent to efileSO@uspto.gov and a paper copy of this document to be sent by an express carrier to the following address:

>Office of the Solicitor
>United States Patent and Trademark Office
>Mail Stop 8
>P.O. Box 1450
>Alexandria, VA 22313-1450

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  October 10, 2025                    */s/ Nicola A. Pisano*
                                             Nicola A. Pisano