**No. 26-101**

---

**UNITED STATES COURT OF APPEALS**

**FOR THE FEDERAL CIRCUIT**

---

**In Re CAMBRIDGE INDUSTRIES USA, INC.,**

***Petitioner***

---

**On Petition for a Writ of Mandamus to the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Nos. IPR2025-00433, IPR2025-00435**

---

# RESPONSE TO PETITION FOR A WRIT OF MANDAMUS

---

Jo Dale Carothers
WEINTRAUB TOBIN
CHEDIAK COLEMAN GRODIN
Law Corporation
475 Sansome Street, Suite 510
San Francisco, California 94111
(415) 433-1400

*Attorneys for Respondent*
*Applied Optoelectronics, Inc.*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ....... 6

JURISDICTIONAL STATEMENT ....... 8

STATEMENT OF THE CASE ....... 8

I. Precedent and Guidance on Discretionary Denial ....... 8

II. Procedural History ....... 10

ARGUMENT ....... 11

I. Section 314(d) Bars Petitioner's Statutory Arguments ....... 11

II. Petitioner's Constitutional Claims are Both Forfeited and Fatally Flawed ....... 15

A. Petitioner forfeited its constitutional attacks on the "settled expectations" criterion by not raising them before the agency ....... 15

B. Petitioner fails to show a clear and indisputable violation of the Due Process Clause or separation of powers principles ....... 17

1. Petitioner's separation of powers argument fails ....... 17

2. Petitioner's due process argument fails ....... 17

III. Petitioner Cannot Satisfy the Remaining Mandamus Factors ....... 25

A. Petitioner has alternative means of relief ....... 26

B. Mandamus relief is inappropriate under the circumstances ....... 26

CONCLUSION ....... 29

CERTIFICATE OF COMPLIANCE ....... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberico v. United States*,
783 F.2d 1024 (Fed. Cir. 1986) ....................25

*Allied Chem. Corp.* v. *Daiflon, Inc.*,
449 U.S. 33 (1980) (per curiam)....................22

*American Mfrs. Mut. Ins. Co.* v. *Sullivan*,
526 U.S. 40 (1999)....................22

*Anthony Inc.* v. *Controltec, LLC*,
No. IPR2025-00559, Paper 12 (P.T.A.B. July 16, 2025) ....................24

*Apple Inc.* v. *Fintiv, Inc.*,
No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020)..............9, 14

*Apple Inc. v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023) ....................*passim*

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019), *vacated on other grounds*, *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021)....................16

*Becton, Dickinson & Co. v. B. Braun Melsungen AG*,
No. IPR2017-01586, Paper 8 ....................9, 10

*Bloch v. Powell*,
348 F.3d 1060 (D.C. Cir. 2003)....................22

*Cheney* v. *U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)....................7, 26

*Cuozzo Speed Techs v. Lee*,
579 U.S. 261 (2016)....................*passim*

*Dalton v. Specter*,
511 U.S. 462 (1994)....................12, 17

*In re DBC*,
545 F.3d 1373 (Fed. Cir. 2008) ....................15

*Embody, Inc. v. LifeNet Health*,
No. IPR2025- 00248, Paper 13 (P.T.A.B. June 26, 2025) ....................24

*Freytag v. C.I.R.*,
501 U.S. 868 (1991) (Scalia, J., concurring) ....................17

*General Plastic Indus. Co. v. Canon Kabushiki Kaisha*,
No. IPR2016-01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) ....................8, 9

*GPX International Tire Corp. v. United States*,
780 F.3d 1136 (Fed. Cir. 2015) ....................18

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994). Here, the Director Memo ....................19

*In re Miller*,
828 F. App'x 717 (Fed. Cir. 2020) ....................22

*In re Synthes (U.S.A.)*,
346 F. App'x 583 (Fed. Cir. 2009) ....................22

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
989 F.3d 1375 (Fed. Cir. 2021) ....................*passim*

*Nintendo Co. v. Resonant Sys., Inc.*,
No. IPR2025-00680, Paper 18 (P.T.A.B. Aug. 14, 2025) ....................24

*Patlex Corp. v. Mossinghoff*,
758 F.2d 594 (Fed. Cir. 1985) ....................21

*Princess Cruises, Inc. v. United States*,
397 F.3d 1358 (Fed. Cir. 2005) ....................19

*Rodriguez v. Peake*,
511 F.3d 1147 (Fed. Cir. 2008) ....................20

*Stern v. Marshall*,
564 U.S. 462 (2011) ....................17

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) .......... 22

*Trump v. Hawaii*,
585 U.S. 667 (2018) .......... 18

*Valve Corp.* v. *Elec. Scripting Prods., Inc.*,
No. IPR2019-00062, Paper 11 (P.T.A.B. April 2, 2019) .......... 9

**Statutes**

5 U.S.C. § 701 .......... 6, 28

28 U.S.C. § 1651 .......... 8

35 U.S.C. § 314 .......... *passim*

35 U.S.C. § 315 .......... 8, 20

35 U.S.C. § 325 .......... 9

**Other Authorities**

U.S. Const, amend. V .......... 22

## INTRODUCTION

A single sentence from the Supreme Court's *Cuozzo* decision resolves this mandamus proceeding: "the agency's decision to deny [an *inter partes* review] petition is a matter committed to the Patent Office's discretion." *Cuozzo Speed Techs v. Lee*, 579 U.S. 261, 273 (2016).[1] Such a decision is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and therefore unreviewable. *Cuozzo*, 579 U.S. at 273; *accord Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021). In other words, because the applicable statutes do not "compel[]" the Director to institute an *inter partes* review ("IPR") in *any* circumstance, Petitioner cannot show that the agency clearly and indisputably violated any statute by declining to institute the IPRs at issue here. *Mylan*, 989 F.3d at 1382. Petitioner's APA- and AIA-based arguments are thus nonstarters in the mandamus posture. *See id.*

For similar reasons, Petitioner does not come close to showing a clear and indisputable constitutional violation. Again, because the decision to deny institution is "committed to agency discretion by law," Petitioner has no right—constitutional or otherwise—to institution of an IPR or to consideration of its IPR

[1] This brief largely incorporates *mutatis mutandis* the arguments set forth in the Response (Dkt. No. 40) of Respondent Polaris PowerLED Technologies, LLC., filed October 16, 2025, currently pending before this Court in Case No. 25-152 in response to a Petition seeking similar relief.

petitions under any particular set of discretionary criteria. *See id.* On top of that, even if Petitioner *had* a constitutionally protected right at stake, they received everything the Due Process Clause requires: notice and an opportunity to be heard. Petitioner was permitted to, and did, brief its discretionary denial arguments in light of the agency's current guidance on IPR institution. *See, e.g.,* Appx173-198; Appx367-394; *see also* Appx199-219; Appx395-416. And, if all that were not enough, Petitioner forfeited its constitutional arguments by failing to raise them previously with the USPTO. *See, e.g., id.*

Further, Petitioner cannot satisfy the other criteria for mandamus relief. *See Cheney* v. *U.S. Dist. Ct. for D.C.,* 542 U.S. 367, 379-81 (2004); *see also Mylan,* 989 F.3d at 1382-83. Petitioner has alternative avenues of relief; it is free to challenge the patents at issue in other forums such as a district court. And, Petitioner's contention (at p. 35) that mandamus is "appropriate" because its petition presents "basic, undecided questions regarding the USPTO's authority" defies not one, but two layers of binding precedent. Petitioner may disagree with *Cuozzo* and *Mylan*, but they are the law.

In sum, Petitioner simply asks this court to substitute its judgment for the USPTO's as to how the agency should decide which IPR petitions to institute. But those sorts of resource-allocation decisions are the USPTO's to make. *See Mylan,* 989 F.3d at 1382. The petition should be denied.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under the All Writs Act "to consider [a] request for mandamus" relief. *Mylan* 989 F.3d at 1381; *see also* 28 U.S.C. § 1651(a).

## STATEMENT OF THE CASE

### I. Precedent and Guidance on Discretionary Denial

Congress established various circumstances in which institution of an IPR is precluded. *E.g.*, 35 U.S.C. § 315. However, it specified no circumstances under which institution is required. *See id.* § 314(a); *Cuozzo*, 579 U.S. at 273; *Mylan*, 989 F.3d at 1382.[2] Congress further provided that the agency's determination not to institute an IPR is "final and non-appealable." 35 U.S.C. § 314(d). In short, "[t]he Director is permitted, but never compelled, to institute an IPR"; "no petitioner has a right to ... institution"; and judicial review of an institution denial is unavailable in the absence of a "colorable constitutional claim[]." *Mylan*, 989 F.3d at 1382.

Thus, over the years, Directors have set out various criteria for the agency to use in employing its discretionary authority over IPR institution. *See, e.g.*, *General Plastic Indus. Co. v. Canon Kabushiki Kaisha*, No. IPR2016-01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) (precedential) (discussing discretionary factors

[2] It is not just "[t]he USPTO" that "invokes § 314(a) as the source of the Director's discretion," Pet. at p. 28. *Cuozzo* itself cited § 314(a) for the proposition that the agency has "no mandate to institute review." 579 U.S. at 273.

for multiple IPR petitions); *Valve Corp.* v. *Elec. Scripting Prods., Inc.*, No. IPR2019-00062, Paper 11 (P.T.A.B. April 2, 2019) (precedential) (applying *General Plastic* factors to different petitioners); *Becton, Dickinson & Co. v. B. Braun Melsungen AG* (precedential), No. IPR2017-01586, Paper 8 (discussing non-exclusive factors considered in applying 35 U.S.C. § 325(d)).

For example, because IPR proceedings often coincide with parallel district court litigation, Directors have previously instructed the Board to consider a non-exhaustive list of factors to determine whether IPR of a patent also asserted in district court is an appropriate use of the agency's resources. These factors, set forth in *Apple Inc.* v. *Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) (precedential), instruct the Board to take "a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review." *Id.* at *3.

In March 2025, then Acting Director Stewart issued a memorandum entitled "Interim Processes for PTAB Workload Management" ("Director Memo") that, among other things, sets forth additional factors for the agency to consider in determining whether to institute AIA proceedings, including IPRs. Appx066-068.

One such factor—the focus of the present petition—is the "[s]ettled expectations of the parties, such as the length of time the claims have been in force." *Id*. at 067. The Director Memo's guidance "aim[s] to improve PTAB

efficiency, maintain PTAB capacity to conduct AIA proceedings, reduce pendency in *ex parte* appeals, and promote consistent application of discretionary considerations in the institution of AIA proceedings." *Id*. at 068.

**II. Procedural History**

In February 2024, Patent Owner Applied Optoelectronics, Inc. sued Petitioner Cambridge Industries USA Inc., alleging infringement of eight patents concerning optoelectronic modules. Appx430-445.

On January 17, 2025, Petitioner filed IPR petitions challenging five of those patents, including two that are the subject of this petition. Appx075-126, Appx228-303.

On June 27, 2025, the Acting Director rejected two of Petitioner's IPR petitions on discretionary grounds noting that

> "patents challenged in IPR2025-00433 and IPR2025-00435, … have been in force for nine and seven years, respectively, and not from the same patent family as those in IPR2025-00434, IPR2025-00436, and IPR2025-00437. Accordingly, Patent Owner's settled expectations as to the patents challenged in IPR2025-00433 and IPR2025-00435 are stronger and discretionary denial is appropriate as to these proceedings."

Appx003, Appx010.

While the Acting Director held that the Patent Owner had settled expectations and discretionary denial was appropriate, the Acting Director also found: "[a]lthough certain arguments are highlighted above, the determination to

exercise discretion to deny institution is based on a holistic assessment of all the evidence and arguments presented." *Id.*

For example, the Acting Director analyzed other arguments as part of the holistic review, including Patent Owner's arguments that the patents are subject to a district court litigation where claim construction briefing is complete and whether the Petitioner is over-reliant on expert testimony. *Id.* In other words, the Acting Director, exercising authorized discretion, holistically balanced the issues and record presented in the papers to deny institution.

The Acting Director then affirmed this decision in an August 21, 2025 Order denying Petitioner's request for director rehearing of both IPRs. Appx012-14.

This mandamus proceeding followed.

## ARGUMENT

### I. Section 314(d) Bars Petitioner's Statutory Arguments

A. Petitioner's arguments (at pp. 19-30) that the Acting Director's institution denials violated the APA and AIA fail right out of the gate. *Mylan* is clear beyond doubt: "there is no reviewability of the Director's exercise of his discretion to deny institution except for colorable constitutional claims." 989 F.3d at 1382. Petitioner's APA and AIA arguments are statutory, not constitutional, and therefore are not cognizable on mandamus under this Court's precedent.

*Mylan* follows directly from the Supreme Court's holding in *Cuozzo* that the "decision to deny a petition [for IPR] is a matter committed to the Patent Office's discretion." 579 U.S. at 273. Given that discretion, "no petitioner has a right to ... institution." *Mylan*, 989 F.3d at 1382. That fact, in combination with § 314(d)'s "prohibition on appeal of such decisions," means the mandamus standard is exceedingly "difficult to satisfy" if the petitioner "challenges a decision denying institution." *Id.* In particular, ultra vires or other statutory arguments "cannot be a basis for granting" mandamus from an institution denial. *Id.* at 1382-83.

These principles foreclose Petitioner's arguments insofar as they raise claims regarding statutory requirements, including the APA or AIA. And that goes as well for Petitioner's purported "separation of powers" argument (at pp. 25-31), which is simply another name for Petitioner's contention that the Acting Director's actions here were inconsistent with the AIA. *Mylan* may permit constitutional claims regarding the agency's non-institution decisions in the mandamus context, but it does not permit "run-of-the-mill statutory interpretation" questions disguised as constitutional violations. *Apple Inc. v. Vidal*, 63 F.4th 1, 13 (Fed. Cir. 2023); *see also Dalton v. Specter*, 511 U.S. 462, 473 (1994) (claims alleging that an official has "exceeded his statutory authority are not 'constitutional' claims").

Therefore, Petitioner's arguments (at pp. 19-21)—echoed by certain amici—that the agency "violated the APA by retroactively applying the 'settled

expectations' rule without authority or reasoned decision making" necessarily fail. Petitioner's other arguments (at pp. 25-31)—also echoed by certain amici—that the agency "exceeded its authority ... by inventing an IPR institution criterion untethered to the AIA" likewise fail. So too do Petitioner's arguments (at pp. 21-25)—again, also echoed by amici—that the agency "violated the APA and AIA by imposing a limitation on institution without notice-and-comment rulemaking." These are statutory arguments and thus are not cognizable in the mandamus context.

Petitioner's attempts to avoid *Mylan* should be rejected out of hand. *Mylan* "squarely decide[]" that statutory attacks on institution denials are not cognizable on mandamus. *Contra* Pet. at p. 26; *see Mylan*, 989 F.3d at 1382. While the *Mylan* Court admittedly did not "explore the outer contours of possibility" for mandamus, *see* Pet. p. 32, it laid to rest all doubt about one thing: "there is no reviewability of the Director's exercise of his [or her] discretion to deny institution except for colorable constitutional claims." *Mylan*, 989 F.3d at 1382. What is more, in the very sentence quoted by Petitioner, the Court emphasized that "it is difficult to imagine a mandamus petition that challenges a denial of institution and identifies a

clear and indisputable right to relief." *Id.* Petitioner's dissatisfaction with the outcome cannot change what the *Mylan* Court held.[3]

B. Even setting *Mylan* aside, Petitioner's statutory arguments fail on their own terms. This Court has held that § 314(d) precludes arguments challenging the contents of the Director's guidance about how the Patent Office will implement the Director's discretion regarding institution. *See Apple,* 63 F.4th at 13 (APA challenges to "the instructions given by the Director to the Board" are barred by § 314(d)). Section 314(d) likewise bars challenges to the way in which the Director has exercised his or her discretion in any particular case. *See id.* Here, Petitioner challenges the substance of the Director Memo—i.e., the contents of instructions regarding how the discretion to deny IPR petitions will be exercised—and the Acting Director's application of that guidance in particular cases. Under *Apple,* such challenges are barred by § 314(d) (even setting aside their procedural impropriety in the mandamus posture).

Petitioner's argument (at pp. 21-25) that the agency was required to utilize notice-and-comment rulemaking to implement the discretionary considerations at issue here is likewise misplaced. Arguments of this sort may be raised only through a district court action, and only to seek "prospective relief," as opposed to

---

[3] It is also far from clear that the Court could "revisit" *Mylan'* s holding even if it wanted to, *contra* Pet. at p. 35-36, since that holding is a direct application of *Cuozzo.*

relief in connection with any prior institution decision. *Apple,* 63 F.4th at 10, 14-17. Petitioner's notice-and-comment argument here is thus directed to the wrong court and seeks the wrong relief.

## II. Petitioner's Constitutional Claims are Both Forfeited and Fatally Flawed.

Petitioner's due process and separation of powers arguments—while theoretically cognizable on mandamus—fail for two reasons. *First,* Petitioner forfeited these arguments by failing to raise them to the USPTO. *Second,* on the merits, Petitioner does not come close to showing a clear and indisputable violation of a constitutional right.

### A. Petitioner forfeited its constitutional attacks on the "settled expectations" criterion by not raising them before the agency.

"It is well-established that a party generally may not challenge an agency decision on a basis that was not presented to the agency." *In re DBC,* 545 F.3d 1373, 1378 (Fed. Cir. 2008). This rule applies to constitutional challenges. *Id.*

Here, Petitioner filed five separate response briefs on discretionary denial (in addition to two requests for rehearing) in which it could have raised a constitutional challenge. Petitioner did not do so. Instead, it affirmatively argued under the framework set forth in the Director Memo. And, while Petitioner contended that the Director Memo should not apply to proceedings initiated prior

to its issuance, Petitioner's arguments rested exclusively on statutory and policy rationales. *See, e.g.*, Appx173-198; Appx367-394; *see also* Appx199-219; Appx395-416. For this reason alone, the Court should reject Petitioner's constitutional arguments.

While this Court theoretically still has discretion to consider arguments not previously raised, it should decline to exercise that discretion here. This Court sometimes excuses forfeiture in cases where "the Board could not have corrected" the asserted problem, but it has applied forfeiture principles strictly where the agency "could have corrected the [alleged] Constitutional infirmity" had a litigant timely raised the issue. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1327 (Fed. Cir. 2019) (discussing *DBC,* 545 F.3d at 1380), *vacated on other grounds, United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). Here, Petitioner's constitutional complaints concern the Acting Director's exercise of discretionary denial authority. That is something the USPTO could have addressed had Petitioner timely raised these issues before the USPTO.

In short, if Petitioner believed that application of the "settled expectations" criterion in this case violated its constitutional rights, it could have—and should have—said as much to the USPTO. The Court should not permit litigants to hold these sorts of argument in reserve until they find out whether the agency's decision

is unfavorable. *See Stern v. Marshall*, 564 U.S. 462, 481-82 (2011); *Freytag v. C.I.R.*, 501 U.S. 868, 895 (1991) (Scalia, J., concurring).

**B. Petitioner fails to show a clear and indisputable violation of the Due Process Clause or separation of powers principles.**

In any event, Petitioner's contentions that the Acting Director violated the Constitution in exercising her discretion to deny these IPR petitions lack merit.

**1. Petitioner's separation of powers argument fails.**

Petitioner's separation of powers argument, as already explained, is merely a statutory argument dressed in constitutional clothing. It fails for that reason alone. Petitioner asserts that the Acting Director's actions here were inconsistent with the AIA and the APA. But claims alleging that an official has "exceeded his [or her] statutory authority are not 'constitutional' claims." *Dalton*, 511 U.S. at 473. And Petitioner's statutory arguments are not cognizable on mandamus. *Supra* Section I.

**2. Petitioner's due process argument fails.**

A. Petitioner's due process argument—which principally invokes retroactivity and reliance principles—is plagued with similar issues. Petitioner conflates the concepts of *constitutionally* impermissible retroactivity and *statutorily* impermissible retroactivity. In addressing the former issue—that is, the question whether the Due Process Clause is offended by retroactive application of a statute or regulation—courts apply rational basis review.

One of the very cases Petitioner cites, *GPX International Tire Corp. v. United States,* 780 F.3d 1136 (Fed. Cir. 2015), makes this point: "due process is satisfied 'simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.'" *Id.* at 1141 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730 (1984)). Petitioner cites *GPX* (at p. 18) for the proposition that the constitutional retroactivity analysis does not "depend[] upon a determination that a vested right exists." But Petitioner does not acknowledge the standard that *does* apply to such challenges: rational basis review.

Under the "deferential" rational basis standard, "'it will be a rare circumstance'" where retroactive application of a law or agency action "'will be held unconstitutional under the Due Process Clause.'" *GPX*, 780 F.3d at 1141. Indeed, Petitioner does not even attempt to surmount this demanding hurdle. *Cf. Trump v. Hawaii,* 585 U.S. 667, 705 (2018) (Supreme Court "hardly ever strikes down a policy as illegitimate under rational basis scrutiny."). To the extent Petitioner means to raise a constitutional retroactivity argument, it therefore fails.

Rather than attempting to show that the agency actions here lacked a rational basis, Petitioner bases its arguments on the considerations applicable to a *statutory* retroactively analysis—i.e., the question whether a statute authorizes retroactive application of the statute itself or of a rule promulgated pursuant to that statute. For

example, Petitioner heavily relies (at pp. 14-19) on the retroactivity framework applied in *Princess Cruises, Inc. v. United States*, 397 F.3d 1358 (Fed. Cir. 2005). That case considered whether an agency's retroactive application of a rule was permitted by the governing statute; the Court did not even mention due process. *See generally id.* To the extent Petitioner raises *statutory* retroactivity arguments, those arguments are not reviewable on mandamus. *Supra* Section I.

At any rate, the statutory arguments fail on their own terms. A "retroactive" rule is one that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). Here, the Director Memo was not applied retroactively in the first place. No decision had been issued on any of the petitions when the Director Memo issued, and Petitioner was able to—and did—brief discretionary denial under the Director Memo's framework. So, any application of the Director Memo was prospective.[4]

---

[4] Notably, the USPTO's June 2022 memorandum on discretionary denial issues issued by then-Director Vidal (cited at Pet. 7-8) ("Vidal Memo") likewise "applie[d] to all proceedings pending before the Office" as of the issuance of the memorandum. Appx030. Further, the Vidal Memo was adopted without notice-and-comment rulemaking, without economic analysis, and without regard to its chilling effect on innovation and competition. Yet Petitioner—and various amici—do not suggest that there was any retroactivity problem with the Vidal Memo, nor do they explain why the Vidal Memo was procedurally superior to the more recent rules adopted in the Director Memo that they now argue are defective.

Even assuming the Director Memo *was* applied retroactively, Petitioner has not shown any right to relief. The retroactivity analysis examines "not merely whether a change has occurred," but "the *nature and extent* of the change in the law," as well as "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008) (quoting *Princess Cruises*, 397 F.3d at 1362-63; *Landgraf*, 511 U.S. at 270). The challenged actions here did not affect any of Petitioner's rights. IPR petitioners never have a right to institution, let alone a right to application of any particular discretionary criteria regarding institution. The statute contains no such criteria and the agency is "never compelled[] to institute an IPR." *Mylan*, 989 F.3d at 1382; *contra* Pet. at p. 16 (incorrectly stating that the "settled expectations" criterion amounts to a "change in law").

The institution decisions do not alter Petitioner's substantive rights or obligations. Those decisions do not preclude Petitioner from challenging the patents' validity elsewhere. Petitioner may prefer to challenge the patents through IPR rather than in district court, but the institution or non-institution of IPR does not impose any substantive legal consequences on Petitioner's conduct—past, present, or future.

For example, denial of institution creates no estoppel that would limit Petitioners' ability to argue invalidity in district court. *See* 35 U.S.C. § 315(e).

Tellingly, Petitioner cites to no cases where statutes or rules have created a property interest in procedures for challenging patent validity. This Court's precedent confirms no such interest exists. *See Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 605 (Fed. Cir. 1985) ("a procedure created by statute to govern [patent] litigation" is not "a property right subject to the protection of the Constitution.").

Similarly, Petitioner cannot articulate any reasonable reliance interest here either. Petitioner had no basis to assume that any particular set of discretionary denial considerations previously applied by the agency would remain immutably fixed for all time. Any such assumption would be unreasonable given *Cuozzo's* holding that institution decisions are committed to agency discretion by law. 579 U.S. at 273.

In sum, Petitioner's argument depends on the premise that they were entitled to an institution decision applying certain discretionary considerations (and not applying others). But that premise is flawed. "[N]o petitioner has a right to ... institution." *Mylan,* 989 F.3d at 1382. And no petitioner has a right to an institution decision governed by any particular set of discretionary considerations. *Cuozzo,* 579 U.S. at273.[5]

[5] Petitioners' reference (at p. 9) to the purportedly "binding" nature of the 2022 Vidal Memo (which as noted was issued under the same procedures as the Director Memo, *see infra* fn. 4) is also unavailing. The Vidal Memo bound the Board, but it

B. To the extent Petitioner means to raise a standalone due process argument apart from their focus on retroactivity, that argument fails as well.

*First*, Petitioner has not established that they have the requisite interest to support a due process challenge. The Due Process Clause protects against deprivation "of life, liberty, or property, without due process of law." U.S. Const, amend. V. The threshold inquiry in a due process challenge is thus whether the plaintiff has been deprived of liberty or property in the first place. *American Mfrs. Mut. Ins. Co.* v. *Sullivan*, 526 U.S. 40, 59 (1999).

"To have a property interest in a benefit," one must "have a legitimate claim of entitlement to it," not just "a unilateral expectation." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id., see Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) ("[W]hen a statute leaves a benefit to the discretion of a government official, no protected property interest in that benefit can arise.").[6]

---

did not purport to bind Vidal herself or any future Director. *See Apple*, 63 F.4th at 7.

[6] Moreover, "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Allied Chem. Corp.* v. *Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (per curiam); *see also, e.g., In re Miller*, 828 F. App'x 717, 718 (Fed. Cir. 2020); *In re Synthes (U.S.A.)*, 346 F. App'x 583, 584 (Fed. Cir. 2009). So, Petitioner could not satisfy the mandamus standard even if it could somehow make out a protected property interest in an institution decision the agency never has to grant.

Petitioner claims (at p. 12) that the "settled expectations" consideration "barred" these IPRs based on the ages of the patents. They argue that this purported "restriction" did not exist when the petitions were filed and that the "retroactive application" of the "settled expectations" consideration "flouts" due process. But granting IPR and articulating guidance about institution criteria are wholly discretionary matters. Petitioner thus cannot support an asserted property interest. "The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution." *Mylan,* 989 F.3d at 1382. Petitioner's due process claim thus fails at the outset: they cannot claim an unconstitutional deprivation of a right they never had in the first place.[7]

To the extent Petitioner's constitutional complaint is with the Director's application of the "settled expectations" consideration, *see* Pet. at pp. 11, 15-17, that argument likewise lacks merit. The statute does not require the Director to explain the decision whether to institute an IPR at all. On the contrary, "[n]othing in the unreviewability principle [of Section 314(d)] ... turns on whether the Director has provided an explanation." *Apple,* 63 F.4th at 13. And "the Supreme Court has rejected the notion that 'if the agency gives a "reviewable" reason for

---

[7] For similar reasons, Petitioner's reliance (at p. 14) on their IPR filing fees is misplaced. Petitioner knew when it filed the IPR petitions that there was no right to institution. The voluntary decision to expend the filing fees cannot transform institution into a constitutionally protected property interest.

otherwise unreviewable action, the action becomes reviewable.'" *Id.* (quoting *Interstate Com. Comm'n v. Brotherhood of Locomotive Eng'rs,* 482 U.S. 270, 283 (1987)). Petitioner has no property interest in having the petitions resolved pursuant to a certain articulation by the Director as to how, or even whether, the Board should factor in the age of a patent when conducting its holistic review of a petition.

The factual predicates to Petitioner's arguments are also incorrect. The Director Memo does not require the Director to deny a petition based on the age of a patent. It does not set forth any rule "that old patents [are] immune from challenge," Pet. at p. 21, nor establish a "maximum-patent-age cap," Pet. at p. 26, or an "old-patent" exclusion, Pet. at p. 21. The USPTO has in fact granted institution of IPR on multiple "old" patents since the Director Memo issued. *See, e.g., Nintendo Co. v. Resonant Sys., Inc.,* No. IPR2025-00680, Paper 18 (P.T.A.B. Aug. 14, 2025); *id.,* Paper 21 (P.T.A.B. Oct. 3, 2025); *Embody, Inc. v. LifeNet Health*, No. IPR2025- 00248, Paper 13 (P.T.A.B. June 26, 2025); *id.*, Paper 14 (P.T.A.B. Aug. 5, 2025); *Anthony Inc.* v. *Controltec*, *LLC*, No. IPR2025-00559, Paper 12 (P.T.A.B. July 16, 2025); *id.,* Paper 13 (P.T.A.B. Aug. 25, 2025). The age of a patent is simply one of many considerations the Director weighs as part of his or her holistic determination whether to deny a petition for discretionary reasons. That is exactly the sort of holistic review that took place here. Appx009-010.

*Second*, even if Petitioner could show the existence of a constitutionally protected interest, it still could not make out a due process violation. "Once a property interest is shown, all due process requires is notice and an opportunity to be heard." *Alberico v. United States*, 783 F.2d 1024, 1027 (Fed. Cir. 1986) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Here, the Director Memo gave Petitioner notice about the applicable discretionary denial considerations, and Petitioner extensively briefed arguments based on those considerations across five separate responsive briefs on discretionary denial and two additional requests for rehearing. *See, e.g.*, Appx173-219; Appx367-416. Having heard Petitioner, the Acting Director denied institution.

In short, Petitioner is not in fact asking for an opportunity to be heard—Petitioner already received that. Instead, Petitioner wants this Court to hold that the Acting Director should have exercised her discretion differently. But Petitioner has no entitlement—constitutional or otherwise—to that remedy. *See Mylan*, 989 F.3d at 1382; *Apple*, 63 F.4th at 13.

## III. Petitioner Cannot Satisfy the Remaining Mandamus Factors

Even if Petitioner could surmount the "especially difficult" hurdle of showing a "clear and indisputable" right to relief, *Mylan*, 989 F.3d at 1382, they could not satisfy the remaining two mandamus factors: the absence of adequate

alternative means to obtain the relief sought and a showing that the writ is appropriate under the circumstances. *See Cheney*, 542 U.S. at 380-81.

### A. Petitioner has alternative means of relief

The only harm Petitioner claims is the denial of one specific avenue for challenging patent claims—an avenue that did not exist until hundreds of years after the birth of patent rights. However, Petitioner has adequate alternative means of relief: Petitioner remains "free to litigate" validity in district court. *Mylan*, 989 F.3d at 1383. Petitioner's one-sentence section on this issue (at p. 35) does not even address this long-standing alternative form of relief.[8]

### B. Mandamus relief is inappropriate under the circumstances.

Nor can Petitioner show that mandamus relief is appropriate here. *See Cheney*, 542 U.S. at 381. As discussed above, (i) most of Petitioner's arguments are barred by § 314(d); (ii) Petitioner identifies no constitutionally protected interest; (iii) to the extent Petitioner had any constitutional interest at stake, Petitioner had notice and an opportunity to be heard after the Director Memo issued; and (iv) Petitioner may pursue their invalidity defenses in district court.

---

[8] The adequacy of this alternative means of relief is particularly evident given that a district court presented with a live controversy about invalidity must necessarily resolve that controversy. Not so for the Patent Office in an IPR, since the "[t]he Director is permitted, but never compelled, to institute an IPR." *Mylan*, 989 F.3d at 1382.

Petitioner's assertion (at pp. 35-36) that this case "is a prime mandamus candidate" because "[i]t presents basic, undecided questions regarding the USPTO's authority" strains credulity. Both the Supreme Court and this Court have squarely answered the relevant question about the agency's authority in this realm: the Patent Office's "decision to deny a petition" is committed to agency discretion by law, *Cuozzo,* 579 U.S. at 273; the Director is *"never* compelled[] to institute an IPR"; and "no petitioner has a right to such institution," *Mylan,* 989 F.3d at 1382 (emphasis added). It necessarily follows that Petitioner has no right to institution governed by any particular set of considerations. *Apple,* 63 F.4th at 13.

Indeed, mandamus relief would be profoundly inappropriate in this case because it would interfere with the agency's prerogative to efficiently allocate its resources. This Court has analogized the USPTO's determination not to institute IPR to other agencies' determinations "not to initiate enforcement proceedings." *Mylan,* 989 F.3d at 1382. Such decisions are "committed to agency discretion by law" because administrative agencies have limited resources and must therefore enjoy freedom to deploy those resources (or not) in a given case to ensure "administrative efficiency." *Id.* (citing *Heckler* v. *Chaney,* 470 U.S. 821, 830-32 (1985)).

These are exactly the sort of considerations outlined in the Director Memo. *See* Appx068 (noting that the Memo "aim[s] to improve PTAB efficiency,

maintain PTAB capacity to conduct AIA proceedings, reduce pendency in *ex parte* appeals, and promote consistent application of discretionary considerations in the institution of AIA proceedings," and further explaining that the Memo's processes "are temporary in nature due, in part to the current workload needs of the PTAB").

Petitioner suggests (at p. 35) that "the USPTO…has produced turmoil [and] creat[ed] serious instability in the patent system." But this assertion—which is also echoed in various amici briefs—amounts to nothing more than a list of complaints about why Petitioner and some amici believe the agency's current discretionary denial practice is bad policy. Meritorious or not, these policy arguments are directed to the wrong audience. Courts do not second-guess purely discretionary policy decisions of the executive branch, *see* 5 U.S.C. § 701(a)(2)—especially not in a procedural posture that requires the petitioner to show a clear and indisputable violation of a legal right to obtain relief. Petitioner plainly thinks the USPTO should be allocating its resources differently. But that judgment is the USPTO's to make. And Petitioner's disagreement with it does not entitle Petitioner to mandamus.

## CONCLUSION

This Court should deny the petition for a writ of mandamus.

Dated: October 24, 2025

Respectfully submitted,

**Weintraub Tobin** Chediak
Coleman Grodin
Law Corporation

By: /s/ Jo Dale Carothers
Jo Dale Carothers

## CERTIFICATE OF COMPLIANCE

### Federal Circuit Case No. 26-101

The foregoing filing complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure 5(c), 21(d), 27(d)(2), and 32(f) and Federal Circuit Rule 32(b) because of the following:

This filing has been prepared using a proportionally-spaced typeface and contains 5,256 words, excluding the items exempted by Fed. R. App. P. 5(c), 21(d), 27(d)(2), and 32(f) and Fed. Cir. R. 32(b)(2). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

Dated: October 24, 2025

**Weintraub Tobin** Chediak
Coleman Grodin
Law Corporation

By: /s/ Jo Dale Carothers
Jo Dale Carothers

# CERTIFICATE OF SERVICE

I, the undersigned, declare:

I am a citizen of the United States, employed in the City and County of Sacramento, California. My business address is 400 Capitol Mall, 11th Floor, Sacramento, California 95814. I am over the age of 18 years and not a party to the within action. On today's date, I caused to be served the attached:

**RESPONSE TO PETITION FOR A WRIT OF MANDAMUS**

[X] (BY U.S. MAIL) I placed such sealed envelope, addressed as follows, in the designated area for outgoing mail in accordance with this office's practice, whereby the mail is collected, sealed, postage thereon fully prepaid for first-class mail and deposited in a United States mailbox that same day.

[ ] (VIA EMAIL) I caused each such document to be sent by electronic mail to the addressees at the email addresses listed below.

[ ] (VIA FEDERAL EXPRESS) I caused each such envelope to be delivered via Federal Express overnight service to the addressees at the addresses listed below.

***Attorneys for Cambridge Industries USA, Inc.***

Nicola A. Pisano
Regis C. Worley
COZEN O'CONNOR
501 West Broadway, Suite 1610
San Diego, CA 92101
Telephone: 619.234.1700
Email: npisano@cozen.com
rworley@cozen.com

Office of the Solicitor
UNITED STATES PATENT AND TRADEMARK OFFICE
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
Email: efileSO@uspto.gov

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Sacramento, California, on October 24, 2025.

/s/ Adele España-Purpur
Adele España-Purpur