No. 26-101

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## IN RE: CAMBRIDGE INDUSTRIES USA INC.,

### *Petitioner*.

## REPLY IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS

**On Petition for a Writ of Mandamus to the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Nos. IPR2025-00433, IPR2025-00435**

Nicola A. Pisano
Regis C. Worley
COZEN O'CONNOR
501 West Broadway, Suite 1610
San Diego, CA 92101
619-234-1700

*Attorneys for Petitioner*
*Cambridge Industries USA Inc.*

October 27, 2025

# <u>TABLE OF CONTENTS</u>

*Page*

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ............................................................................... 1

ARGUMENT ....................................................................................... 4

I.    Section 314(d) does not preclude mandamus relief ....................... 4

    A.    The "setttled expectations" rule was applied retroactively ................. 5

    B.    "Settled expectations" upended that statutory framework ................... 8

II.    Petitioner's right to relief is clear and indisputable ........................ 9

    A.    The USPTO's retroactive policy change violated the Constitution and the APA .................................................. 9

        1.    The agency violated Petitioner's due process rights ................. 9

        2.    The agency violated the APA ................................... 12

    B.    The USPTO's extra-statutory revision to the AIA violated the Constitution's separation of powers. ................................. 15

III.    The USPTO's errors are reviewable in mandamus ...................... 16

    A.    No alternative means of relief exists .................................. 17

    B.    Mandamus is appropriate. ................................................ 18

CONCLUSION ................................................................................ 19

CERTIFICATE OF COMPLIANCE ............................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Chem. Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980) (per curiam).......................................................................11

*Apple Inc. v. Fintiv, Inc.*,
   IPR2020-00019, 2020 WL 2126495 (PTAB Mar. 20, 2020).....................*passim*

*Apple Inc. v. Vidal*,
   63 F.4th 1 (Fed. Cir. 2023) ...............................................................................4, 5

*Barnhart v. Devine*,
   771 F.2d 1515 (D.C. Cir. 1985) ...........................................................................17

*Bloch v. Powell*,
   348 F.3d 1060 (D.C. Cir. 2003) ...........................................................................11

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988)..............................................................................................13

*Bryan v. McDonald*,
   615 F. App'x 681 (Fed. Cir. 2015) ......................................................................17

*Climate United Fund v. Citibank, N.A.*,
   \_F.4th\_, 2025 WL 2502881 (D.C. Cir. Sep. 2, 2025) ...................................8-9

*In re Chestek PLLC*,
   92 F.4th 1105 (Fed. Cir. 2024) ............................................................................13

*Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*,
   579 U.S. 261 (2016)......................................................................................*passim*

*Dalton v. Specter*,
   511 U.S. 462 (1994)...........................................................................................8, 16

*DHS v. Regents of Univ. of Cal.*,
   591 U.S. 1 (2020)..................................................................................................18

*Durr v. Nicholson*,
   400 F.3d 1375 (Fed. Cir. 2005) ......................................................................5, 14

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

## Cases (*Cont'd*)

*Encino Motorcars, LLC v. Navarro*,
　　579 U.S. 211 (2016)................................................................14

*FDA v. Wages & White Lion Invs., L.L.C.*,
　　604 U.S. 542 (2025)................................................................14

*Fornaro v. James*,
　　416 F.3d 63 (D.C. Cir. 2005)..................................................17

*Fuentes v. Shevin*,
　　407 U.S. 67 (1972).................................................................10

*GPX Int'l Tire Corp. v. United States*,
　　780 F.3d 1136 (Fed. Cir. 2015) .............................................10

*Hanauer v. Reich*,
　　82 F.3d 1304 (4th Cir. 1996) ...................................................9

*IGT v. Zynga Inc.*,
　　144 F.4th 1357 (Fed. Cir. 2025) .......................................13, 14

*Landgraf v. USI Film Prods.*,
　　511 U.S. 244 (1994)..................................................................5

*Leedom v. Kyne*,
　　358 U.S. 184 (1958)..................................................................9

*Logan v. Zimmerman Brush Co.*,
　　455 U.S. 422 (1982)............................................................11, 12

*In re Miller*,
　　828 F.App'x 717 (Fed. Cir. 2020) .........................................11

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
　　989 F.3d 1375 (Fed. Cir. 2021) .......................................*passim*

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

*Oil States Energy Servs., LLC v. Greene's Energy Grp.*,
    584 U.S. 325 (2018)...................................................................18

*In re Palo Alto Networks, Inc.*,
    44 F.4th 1369 (Fed. Cir. 2022) ...........................................17

*Princess Cruises, Inc. v. United States*,
    397 F.3d 1358 (Fed. Cir. 2005) .................................7, 8, 10

*Rodriguez v. Peake*,
    511 F.3d 1147 (Fed. Cir. 2008) ....................................6, 7, 8

*SEC v. Chenery*,
    318 U.S. 80 (1943).............................................................14

*In re Synthes (U.S.A.)*,
    346 F.App'x 583 (Fed.Cir. 2009) .....................................11

*Tau-Ken Temir LLP v. United States*,
    147 F.4th 1363 (Fed.Cir. 2025) ........................................14

*Town of Castle Rock v. Gonzales*,
    545 U.S. 748 (2005)...........................................................11

*Woodward v. DOJ*,
    598 F.3d 1311 (Fed. Cir. 2010) ..........................................6

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952)...........................................................16

**Statutes**

35 U.S.C.:
    Section 311...............................................................*passim*
    Section 314(d)..........................................................*passim*

America Invents Act ....................................................*passim*

# INTRODUCTION[1]

"Settled expectations" looked like general agency guidance when added to the *Fintiv* factors, Appx067. It wasn't. As applied to hundreds of IPR petitions, it is a substantive rule denying IPR challenges to most "old" patents.[2] Section 314(a) indisputably authorizes the Director to exercise discretion whether to institute an IPR. But the Acting Director had no authority to ignore express congressional intent and **rewrite** the statute. Section 311(a) *de facto* now reads: "Subject to the provisions of this chapter, a person who is not the owner of a patent**, within six years of the patent's issuance,** may file with the Office a petition to institute an inter partes review of the patent" (emphasis added).

Respondents say the Director's discretion is *boundless*. Not true; discretion requires judgment informed by factual underpinnings and sound policy. "Settled expectations" lacks both. As noted by amici, "settled expectations" exceeds

---

[1] Petitioner invites this Court to consider the Amicus Curiae briefs filed herein by US*MADE et al., (ECF 8, "US*MADE Brief"), the Public Interest Patent Law Institute (ECF 14-2, "PIPLI Brief"), and PTAAARMIGAN (ECF 18-2, "PTAAARMIGAN Brief"), all of which persuasively argue for grant of the relief sought.

[2] Amicus PTAAARMIGAN LLC argues that the proper procedural vehicle to address the agency's *ultra vires* action is an appeal rather than a mandamus petition. Yet amicus and Petitioner agree that "Petitioner should be granted relief" because the PTO's conduct here was "arbitrary, capricious, and in excess of statutory authority." PTAAARMIGAN Brief at 3, 19-22.

statutory authority, violates separation of powers, skirts the safeguards afforded by the APA, and advances bad public policy. It is as irrational as a *Fintiv* factor stating that only IPR petitions filed on Thursdays will avoid discretionary denial—like "settled expectations," such a rule is indisputably arbitrary and capricious.

Respondents whistle past the graveyard of the Acting Director's blatant *ultra vires* conduct, arguing that absent a constitutional claim, an agency's exceeding its statutory authority does not rise to matter for judicial intervention. But the relief sought here addresses a separation of powers constitutional violation, i.e., an administrative agency improperly rewriting a congressionally enacted statute.

Respondents further argue that Petitioner had "notice" of the March 2025 memo's new rule, Appx066. Not true. When Petitioner filed its IPR petitions in January 2025, it had no notice of the future rule change and, moreover, the concept of "settled expectations" is without precedent. Although the non-institution decisions here employ "holistic" boilerplate, no other "factor" mattered. Based on the age of the patents, discretionary denial was ***pre-ordained***. And there was nothing Petitioner could do about it.[3]  Indeed, Petitioner explained the folly of "settled

---

[3] "Notice" of the new rule after filing was like receiving a call from Mom that the cat died—what could knowledge of a now immutable fact change? The cat is dead regardless. As documented in Professor Lemley's amicus brief in Case No. 2025-152, at 8-10, given the Acting Director's hostility to the IPR process, there was no chance she would alter course.

2

expectations" in its request for Director re-hearing, raising many of the issues explored in the amici briefs. Appx199, Appx395. Those requests were denied without explanation. Appx005, Appx012. Respondents argue that Petitioner's "alternative relief" is spending millions of dollars litigating invalidity challenges in district court, with a higher hurdle – the very process from which the AIA promised relief. But this supposed "relief" does not redress the arbitrary decision-making raised in the writ.

"Settled expectations" punishes operating companies while providing a windfall to patent assertion entities. *See*, PIPLI Brief at 5-7. And rather than reducing the filing of IPRs on the relatively few litigated patents, the settled expectations rule, if left unchecked, will necessitate filing of an immense number IPR reviews on newly-issued patents that may never be litigated. *See* US*MADE Brief at 2-7. "Settled expectations" is an irrational rule implementing a mistaken policy at odds with congressional intent. It is this Court's duty to remind the Office of the limits of its statutory authority.

3

# ARGUMENT

## I.    Section 314(d) does not preclude mandamus relief.

Relying on *Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021), Respondents argue (D.Opp.12; PO.Opp.6)[4] that non-constitutional arguments cannot support mandamus relief.  But *Mylan* just said there is "no reviewability of the Director's exercise of [her] discretion to deny institution *except for colorable constitutional claims*." 989 F.3d at 1380 (emphasis added).  Even the Respondents agree.  D.Opp.15, PO.Opp.11.  The Petition here focuses not only on procedural flaws, i.e., failure to comply with APA, but constitutional violations of due process and separation-of-powers.  That the "settled expectations" is a substantive change to the AIA, and not an "interpretational" question as Respondents contend, is beyond dispute.  And contrary to Respondents' contentions, the Petition does not demand institution, but reconsideration under the guidance in effect when the IPR petitions were filed.

Respondents misread *Apple Inc. v. Vidal*, suggesting it applies only to prospective relief and petition-specific challenges.  D.Opp.15-16, PO.Opp.14-15 (citing 63 F.4th 1, 10, 13-16 (Fed. Cir. 2023)).  *Apple*'s background discussion observed that the plaintiffs "s[ought] prospective relief only," but it did not rely on

---

[4] Throughout this brief "D.Opp.__" refers to the Response filed by the USPTO and "PO.Opp.__" refers to the Response filed by the Patent Owner.

that reasoning in permitting review. 63 F.4th at 10. *All* challenges in *Apple* sought prospective relief, even the unreviewable ones. *Apple* held Section 314(d) shields the "substance of the Director's institution discretion" but not "the Director's choice of whether to use notice-and-comment rulemaking to announce instructions for the institution decision." *Id.* at 14. That holding supports review here, where Petitioner challenges the retroactive change in policy without notice-and-comment. The Director insists *Apple* held that Section 314(d) allows review only of "the manner in which the Director relayed those instructions," D.Opp.15. Petitioner's APA and retroactivity arguments raise just such challenges.

### A.    The "settled expectations" rule was applied retroactively.

The Director argues that Petitioner had no vested interest in having its IPR petitions considered in accordance with the guidance—or statutory interpretation of Section 311(a)—in effect at the time those were filed. D.Opp.20-21, PO.Opp.18. Yet even Respondents agree that a retroactive rule is one that impairs "rights a party possessed when he acted." D.Opp.23, PO.Opp.19 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). That is true here. Petitioner prepared and filed its petitions—i.e., *when it acted*—in reliance that the agency would apply then-existing discretionary guidance. By the time "settled expectations" was announced, it was too late for Petitioner to avoid the expense of filing petitions destined for dismissal. *See Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (new notice-

of-appeal requirements could not apply to previously filed appeal); *Woodward v. DOJ*, 598 F.3d 1311, 1315 (Fed. Cir. 2010) (new burden of proof could not apply to pending case).

Respondents' focus on the timing of the institution decision ignores what matters: the new rule's impact on the public's ***past*** acts. Petitioner's harm is not just that the agency created a new substantive rule, but also imposed retroactive application without due process. The Director's claim that "the settled expectations guidance did not affect any of Petitioner's rights," D.Opp.24, beggars belief.[5]

Respondents acknowledge that the retroactivity analysis examines "the *nature and extent* of the change in the law" as well as "fair notice, reasonable reliance, and settled expectations." D.Opp.24. PO.Opp.20 (quoting *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008)). Those factors confirm the problem. First, the "nature and extent of the change in the law was substantial," *Rodriguez*, 511 F.3d at 1153, as shown by the flood in denials of petitions. *See* Pet.15-16; US*MADE Brief at 6-7. For petitions with co-pending litigation, "settled expectations" replaced a nearly

---

[5] Patent Owner's contention that Petitioner "forfeited" its constitutional claims is baseless. PO.Opp.15-16. *See*, e.g., Appx401, Appx406 ("undermines Congressional purpose in enacting the IPR provisions of the AIA"; "discretionary denial not authorized for any basis other than set forth in 35 U.S.C. § 314(a)."). The agency ignored Petitioner's complaints. Appx006. Patent Owner's contention, PO.Opp.19 that "the Director Memo was not applied retroactively in the first place" is risible.

guaranteed pathway to a merits analysis with a virtually certain discretionary denial. *See Rodriguez*, 511 F.3d at 1153 (factor met where change altered chance of success on claim). Second, the change "meaningfully alter[ed] the consequences of relevant past events," *id.* at 1155, because Petitioner cannot go back in time and change the facts underlying its decision to file or the subsequent denial. *See Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1366 (Fed. Cir. 2005) (factor met where data needed under new rule had not been collected under "common understanding[s]" that it was not needed, and it could not be collected later). Finally, "fair notice, reasonable reliance, and settled expectations" confirm retroactivity because it was "objectively reasonable" for the public to rely on years-old guidance that the agency deemed binding but then changed without any notice. *Rodriguez*, 511 F.3d at 1155 (citation omitted); *Princess Cruises*, 397 F.3d at 1366 (factor met based on "letter" regarding prior rule that was "not an official ruling" but was "from a senior Customs official").

The Director contends that Petitioner "had no reasonable basis to assume any particular guidance would remain in place indefinitely," so it was unreasonable to expect the Office to follow it. D.Opp.25; *see also* PO.Opp.21. First, the Director ignores the USPTO's assertion that its 2022 "interim guidance will remain in place until further notice." Appx030. Second, reliance is only "akin to a tiebreaker in

7

close cases." *Princess Cruises*, 397 F.3d at 1366. Courts do not require the kind of concrete reliance the Director demands here. *See, e.g.*, *id.* at 1367 (citing agency's representations, not concrete reliance on them). Regardless, the prior guidance did not preclude reliance; it was "interim" pending a promised rulemaking, *which would have required its own notice*. And whether the public expected the guidance to change in the future, there was no notice before Petitioner acted. The prior guidance informed the public—accurately, until recently—how the agency would treat their cases. Because the "settled expectations" rule meets the Respondents' own retroactivity test, it "cannot be applied to cases pending at the time of its promulgation." *Rodriguez*, 511 F.3d at 1153.

**B.    "Settled expectations" upended the statutory framework.**

The Director denies that the Acting Director created "an extra-statutory" criterion that violated "the Constitution's separation of powers," D.Opp.26 (quoting *Dalton v. Specter*, 511 U.S. 462, 473 (1994)) and thus is unreviewable. But the Petition does not argue that the Acting Director merely exceeded her statutory authority; it argues that she arrogated authority from Congress with a new rule that disregarded Congress's limits. *Dalton* is inapposite because it did not involve a new rule at odds with express congressional intent—it involved an interpretation question. The issue is not just "whether executive officials violated the governing statutes," *see Climate United Fund v. Citibank, N.A.*, __F.4th__, 2025 WL 2502881,

8

at *10 (D.C. Cir. Sep. 2, 2025), but whether the agency in effect ***rewrote them***.

Section 314(d) does not categorically prohibit statutory-authority challenges, and any such interpretation would conflict with the longstanding principle, recognized by the Supreme Court, that appeal-bar statutes do not extend to "claims that the agency exceeded the scope of its delegated authority." *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996) (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)). Further, nothing in Sections 325(d) or 315(d) authorized the Acting Director to disregard the express language of Section 311(a). Contrary to the Director's contentions (D.Opp.28-30), the dispute here does not involve the agency's discretionary ***interpretation*** of the Section 311(a), but rather *de facto* rewriting of the statute to exclude an entire class of patents based on age.

## II.    Petitioner's right to relief is clear and indisputable.

### A.    The USPTO's retroactive policy change violated the Constitution and the APA.

#### 1.    The agency violated Petitioner's due process rights.

Respondents' arguments that there is no due-process problem, D.Opp.3, 16-19; PO.Opp.23-25, lack merit.

***Retroactivity.*** Adoption of the "settled expectations" rule violated the due-process clause's prohibition on retroactivity. Pet.15-19. Respondents skate around the retroactivity issue with meritless arguments. D.Opp.23-25; PO.Opp.17-18;

9

*supra* at 3-5.

Respondents also assert that Petitioner had no vested interest. D.Opp.19, 25. Not only is that contention wrong (*supra* at 5), but no interest needs to be shown to establish a violation of due-process anti-retroactivity principles. *See GPX Int'l Tire Corp. v. United States*, 780 F.3d 1136, 1141 (Fed. Cir. 2015) (when party challenges a law "because it operates retroactively," "we do not think that the outcome of the due process analysis depends upon a determination that a vested right exists"); *Princess Cruises*, 397 F.3d at 1362-67 (not inquiring into protected interest).  And Petitioner has demonstrated violations of both constitutional and administrative dimensions.  *Supra* 3-8.

*Notice & opportunity.*  Respondents contend that Petitioner received notice and opportunity to discuss how the "settled expectations" rule would affect institution.  D.Opp.2, 22; PO.Opp.7, 25.  But Petitioner lacked notice of that rule when it mattered.  The ability to *address* the new rule's application was not a stand-in for *notice* that a new substantive rule would be applied, nor indeed even how it would be applied.  Petitioner was denied notice "when the deprivation c[ould] still be prevented," *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972)—before deciding to file its petitions, before paying the required fees, and before investing substantial sums in petitions, the merits of which were not considered.

10

***Protected interest.*** The previous Director's guidance created a conditional protected interest in avoiding denial based on co-pending litigation. Pet.18-19. Respondents' counterarguments lack merit. D.Opp.17-21, 32-33; PO.Opp.23-25.

Respondents insist that Petitioner had no protected interest in guidance for deciding whether to institute an IPR because the Director has denial discretion. *E.g.*, PO.Opp.22; D.Opp.20. But Petitioner had no reason to believe that the Acting Director could casually violate separation-of-powers to rewrite Section 311(a). The Director does not have *unfettered* discretion, and constraints on discretion create a protected interest. Respondents' cases about *unconstrained* discretion are inapposite. *See* D.Opp.17-18; PO.Opp.22 (discussing *Bloch*, *Castle Rock*, *Allied Chemical*, *Miller*, and *Synthes*). Neither Respondent disputes that Petitioner had a protected interest if the Director's discretion was constrained. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429-30 (1982) (identifying protected interest in "use of established adjudicatory procedures").

Respondents contend (D.Opp.20, PO.Opp.23) that the agency is not obliged to explain its institution decisions. But the Director cannot avoid review of the Board's application of *Fintiv*, contrary to the previously existing guidance, and remain silent. Patent Owner further contends (PO.Opp.24) that "settled expectations" "does not require the Director to deny a petition based on the age of

11

the patent" and that the agency has "in fact granted institution on multiple 'old' patents since the Director Memo issued." Patent Owner's observation only confirms the irrational, arbitrary and capricious nature of the rule.

Apart from the constrained discretion, Petitioner had an interest in the fees and costs expended in preparing and filing the petitions. Pet.18-19. Money is a property interest, and Petitioner was deprived of that money without the procedures it was entitled to at that time it filed its IPR petitions. *See Logan*, 455 U.S. at 429-30. Respondents disagree (D.Opp.21; PO.Opp.23,n.7) but cite no authority. Using the numbers cited by amicus US*MADE, petitioners who relied on the prior Director's guidance spent more than *$18 million* to prepare and file petitions that were never considered on the merits due to "settled expectations." US*MADE Brief at 1, Addendum (185 denials of petitions, each costing $100,000+ to file).

### 2.    The agency violated the APA.

Respondents barely dispute that the agency action violated the APA because the "settled expectations" rule did not go through notice and comment, was retroactive, and violated the change-in-position doctrine. Respondents instead argue that none of those bases apply, as all are subsumed in the agency's overarching discretion. D.Opp.3-5, 12-16; PO.Opp.11-12. This Court should reject the paltry merits arguments Respondents do make.

***Notice-and-comment rulemaking.*** The Petition explained that the "settled expectations" was a rule change impermissibly imposed without notice-and-comment rulemaking. Pet.21-25. Respondents do not dispute this but instead invoke Section 314(d) and argue that a statutory violation of non-constitutional dimension cannot invoke this Court's intervention. D.Opp.13-17, PO.Opp.14. But the Director's *uncontested* violation of the APA's notice-and-comment requirement surely constitutes a "blatant violation[] of legal constraints or other 'shenanigans'" reviewable under *Cuozzo*. *IGT v. Zynga, Inc.*, 144 F.4th 1357, 1367 (Fed. Cir. 2025) (quoting *Cuozzo*, 579 U.S. at 275). Petitioner explained, and neither Respondent disputes, that "settled expectations" *de facto* altered the "substantive standards by which the USPTO evaluates" IPR petitions, *In re Chestek PLLC*, 92 F.4th 1105, 1110 (Fed. Cir. 2024), with a dispositive effect on the outcome here. That makes it substantive and subject to notice-and-comment.

***Impermissible retroactivity.*** Respondents do not dispute that the USPTO lacks authorization to promulgate retroactive rules. Pet.20-21. Instead, they argue counter-factually that no retroactivity occurred. *Supra,* 5-7. Retroactivity violates the APA regardless of whether the new rule is substantive or procedural. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 215 (1988) (violation to retroactively

13

apply substantive rule on Medicare cost limits); *Durr*, 400 F.3d at 1380-81 (violation to retroactively apply procedural rule).

    ***Change-in-position doctrine.***  The Petition explained that the agency violated the change-in-position doctrine by switching policies without explanation or consideration of reliance.  Pet.20-21.  Neither Respondent addresses the change-in-position doctrine.  The Director questions the adequacy of the reliance interests, but the question under the doctrine is whether the Acting Director considered them *at the time*, not now.  *Chenery* prevents such post-hoc justifications anyway.  *Tau-Ken Temir LLP v. United States*, 147 F.4th 1363, 1377 (Fed. Cir. 2025) (citing *SEC v. Chenery*, 318 U.S. 80, 87 (1943)).

    Critically, the change-in-position doctrine applies regardless of whether the rule change was binding.  *FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 918 n.5, 928 (2025)) (applying to guidance); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (applying to regulation that had undergone notice-and-comment rulemaking).  Respondents do not contend otherwise, making the violation undisputed.  An *undisputed* violation is the kind of "blatant violations of legal constraints or other 'shenanigans'" that are reviewable under *Cuozzo*.  *IGT*, 144 F.4th at 1367 (citation omitted).

14

Respondents fail to confront any of these issues. They did not and cannot identify any statutory authority or reasoned justification for imposing its new rule retroactively on Petitioner. That APA violation warrants mandamus.

**B.    The USPTO's extra-statutory revision to the AIA violated the Constitution's separation of powers.**

The agency's revision to Section 311(a) rewrites Congress's limits on how IPRs affect litigation, Pet.5, 7, 30-31, ignores express congressional intent, and violates the separation of powers by usurping authority reserved to Congress. *Id.*

The Director asserts, "Petitioner does not contend that the settled expectations guidance is constitutionally impermissible, instead basing its challenge entirely on matters within the USPTO Director's discretion." D.Opp.18, n.3. That is incorrect. Petitioner's contention (expounded in the amici briefs) is that "settled expectations" constitutes a violation of due process (retroactive application) and of separation of powers (administrative rewriting of the statute). Pet.5, 7, 30-31. The Director identifies no affirmative source of statutory authority—or any authority—for such conduct. Instead, the Director contends that there is no *limit* on the agency's discretion.

Agency authority is defined by what Congress *grants*, not what it forbids— there is no inherent power. Because there is no affirmative authorization in the statute, the Director is necessarily invoking inherent power and making a

15

constitutional argument as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). *See Dalton*, 511 U.S. at 473. Moreover, Congress specifically spoke to the timing of the permissible challenges in the complimentary sections of the AIA dealing with post-grant reviews, Pet.30-31; agencies are not entitled to legislate where Congress has set clear rules.

Patent Owner posits (PO.Opp.18) that a rational basis exists for the settled expectations rule. But as noted in the PTAAARMIGAN Brief at 4, the agency did not connect the new rule to any goals of the rule. As explained in the US*MADE Brief at 3-8, the new rule—if applied as proposed by the current Director—will massively overwhelm the PTAB's ability to perform its statutorily authorized function. More age-based discretionary denials can only *impede* patent integrity by shielding patents otherwise subject to review, the exact opposite of Congress's intent. *See* PIPLI Brief at 4-10.

## III.    The remaining mandamus criteria are satisfied.

Respondents argue that two other mandamus factors—lack of an alternative remedy and appropriateness of writ relief under the circumstances—weigh against relief. D.Opp.31-33; PO.Opp.26. They are wrong. Not only do respondents confuse the remedy sought in this Petition with the remedy sought in the IPR, but the Director raises a political-accountability argument that has the issue backwards.

16

## A.    No alternative means of relief exists.

The Director does not dispute that a district-court APA challenge would not provide the requested relief; that Petitioner exhausted its administrative remedies; and that no other forum can remedy the Constitutional and APA violations here. *See* D.Opp.32.   This Court has already recognized the lack of alternative means for challenging an institution decision.   *Mylan*, 989 F.3d at 1380; *In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022).   Respondents' suggestion that a separate validity challenge is an alternate means of relief (D.Opp.32, PO.Opp.26) misreads *Mylan*.   This Court's mention of a separate validity challenge was in the context of Mylan's argument that it would be bound to another party's ongoing validity challenge; it was not a suggestion that such a challenge was an alternative to Mylan's mandamus challenge.   *Mylan*, 989 F.3d 1383.

The Director's attempt to cabin *Palo Alto* to constitutional challenges (D.Opp.31-32) fares no better—the nature of the challenge does not affect the adequacy of other remedies.   Nor do the Director's cases overcome *Palo Alto*.   In each, the relief sought on mandamus was available elsewhere.   *Bryan v. McDonald*, 615 F. App'x 681, 684 (Fed. Cir. 2015) (service connection for disability); *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (higher disability claim); *Barnhart v. Devine*, 771 F.2d 1515, 1527 (D.C. Cir. 1985) (position-by-position comparison). The relief sought here is available nowhere else.

17

### B.    Mandamus is appropriate.

Mandamus is appropriate given the impact of the "settled expectations" rule and to ensure that the USPTO follows the law. Pet.32-35. Respondents' obstinate responses (D.Opp.32-33; PO.Opp.26-27) only confirm that need. *Supra*, fn. 3.

The Director incorrectly argues (D.Opp.33) that the requested relief "would raise political-accountability concerns." Instead, the APA's requirements ensure that "agencies are accountable to the public." *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (citation omitted). Exempting agency actions from review makes agencies *less* accountable. The USPTO's accountability is especially important because patents are "public franchises," and issuing them "takes from the public rights of immense value." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 335 (2018). Unpatentable claims impede public liberty and stifle industrial competitiveness.

As demonstrated by Petitioner and in the amici briefs, the "settled expectations" rule does not rely on any reasoned policy determination, is beyond the agency's constitutional authority, and will stifle industry in this country. Relief would not inappropriately "hamstring" the Director "from responding to evolving conditions facing the agency," D.Opp.33, it would merely require the agency to

18

follow the law. Petitioner asks that, pursuant to the APA and constitutional requirements, agency position changes follow the law.

## CONCLUSION

This Court should direct the USPTO to apply the existing discretionary-denial guidance when the petitions were filed.

Dated:  October 27, 2025

Respectfully Submitted,

COZEN O'CONNOR

*/s/ Nicola A. Pisano*
Nicola A. Pisano
Regis C. Worley, Jr.
501 West Broadway, Suite 1610
San Diego, CA 92101
619-234-1700

*Attorneys for Petitioner*
*Cambridge Industries USA Inc.*

19

## CERTIFICATE OF COMPLIANCE

1.    This petition complies with the type-volume limitation of Fed. R. App. P. 21(d) because:

■    this petition contains 3647 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.    This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

■    this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Times New Roman font.

*/s/ Nicola A. Pisano*
Nicola A. Pisano

20